ABIGAIL H. BISHOP, Respondent, *v.* THE NEW YORK TIMES COMPANY, Appellant.

**Libel — trial — evidence — when errors not cured by reduction of verdict — errors not raised by proper objections and exceptions cannot be considered by Court of Appeals — testimony of opinions of third parties as to gravity of libel inadmissible — testimony as to actions of plaintiff over long period after publication of libel inadmissible — testimony showing mental distress of child as cause of mental distress to plaintiff inadmissible.**

1. A plaintiff is not compelled to rely upon the favorable presumption with which the law endows his cause of action, of injury to reputation and mental distress, as a basis for general damages in an article libelous *per se*, but he may prove if he can that he has been avoided and shunned by former friends and acquaintances as the direct and well-connected result of the libel.

2. Errors affecting the course of a trial and infecting the entire verdict may not be cured by reduction of the verdict by the Appellate Division, on the speculation that their injurious effects, when measured by the size of the verdict, have not exceeded a certain amount. (*Cohalan* v. *N. Y. Press Co., Ltd.*, 212 N. Y. 344; followed.)

3. Alleged errors upon trial of an action for libel in the admission of evidence claimed to establish special damages in the absence of appropriate allegations in the complaint of such special damages; in the admission of evidence tending to show specific slights and avoidance of the plaintiff after the libel was published, and in the admission of testimony by plaintiff's secretary that she repeated to the former remarks made by shopkeepers with much resulting distress to plaintiff cannot be considered by this court in the absence of proper and adequate objections and exceptions.

4. Evidence of statements of friends of the plaintiff that the article in question was "perfectly outrageous," blaming plaintiff for going to a public place the evening after its publication and to the effect that it would be better for her not to "come around until after all this notoriety is over because it is too dreadful," thereby placing before the jury opinions of third persons as to the gravity of the libel which it was for the jury alone to draw was incompetent and not harmless.

5. Testimony of plaintiff's social secretary, covering a period of six months after the libel was published, as to a change in plaintiff's habits goes farther than is safe or permissible in detailing conduct of a plaintiff and ascribing it to the publication of a libel. While the mental distress resulting from a libel for which damages may be recovered may to a certain extent be proved by acts and physical appearances such as those which accompany the plaintiff's first view of the article, which are in the nature of exclamations or which are beyond the control of the plaintiff, acts extending over a long period after the publication, voluntary upon her part and the subject of simulation and deceit, are of a character too dangerous to be made the basis of damages.

6. Testimony of plaintiff showing, in effect, that her child was ostracised and suffered great mental distress as the result of the libel and that this distress reacted on the plaintiff is inadmissible where the purpose and purport of the testimony was to show mental distress of the child as a cause of mental distress to plaintiff. A plaintiff in an action for libel may not show that a member of her family has been ostracised and distressed with the result of distressful reaction upon herself as an element of additional and increased damages.

*Bishop* v. *New York Times Co.*, 194 App. Div. 881, reversed.

(Argued March 9, 1922; decided May 31, 1922.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 18, 1920, modifying and affirming as modified a judgment in favor of plaintiff entered upon a verdict.

*Alfred A. Cook, Emil Goldmark* and *John M. Greenfield, Jr.,* for appellant. The disposition made of the case by the Appellate Division was beyond any power possessed by that court and in violation of defendant's constitutional right of trial by jury; and in any event the Court of

Appeals now having jurisdiction by reason of the modification of the judgment will determine whether the trial was free from prejudicial error. (*Middleton* v. *Whitridge,* 213 N. Y. 499; *Getty* v. *Williams Silver Co.,* 221 N. Y. 34; *Herman* v. *U. S. Trust Co.,* 221 N. Y. 143; *Cohalan* v. *N. Y. Press Co.,* 148 App. Div. 89; 212 N. Y. 344; *Walling* v. *C. A. Assn.,* 173 App. Div. 491; *Stapleton* v. *Butensky,* 188 App. Div. 237; *Ives* v. *S. B. Ry. Co.,* 201 N. Y. 271; *Greaney* v. *Troy Wagon Works Co.,* 228 N. Y. 591; 181 App. Div. 945; *Cohen* v. *N. Y., Ontario & Western Ry. Co.,* 227 N. Y. 651; 187 App. Div. 934.) A mass of highly prejudicial testimony was admitted relating to particular consequences claimed to have been caused by the libel, in violation of the rule that only general damages, as pleaded, could be recovered, and without, in many instances, connecting such consequences with the libelous publication. (*Loftus & Co.* v. *Bennett,* 68 App. Div. 128; *Gressman* v. *M. J. Assn.,* 197 N. Y. 474; *Fry* v. *Bennett,* 16 N. Y. Super. Ct. 246; *Crosby* v. *Cobb,* 3 How. Pr. [N. S.] 37; *McDuff* v. *Detroit Eve. Journal Co.,* 84 Mich. 1; *Sheftall* v. *C. of G. R. R. Co.,* 123 Ga. 589; *Turner* v. *Hearst,* 115 Cal. 394; *Pettibone* v. *Simpson,* 66 Barb. 492; *Terwilliger* v. *Wands,* 17 N. Y. 54; *Olmsted* v. *Brown,* 12 Barb. 657; *Schoepflin* v. *Coffey,* 162 N. Y. 12.)

*Stanley C. Fowler, Grant Hoerner* and *Thomas L. Zimmerman, Jr.,* for respondent. Testimony as to the acts and declarations of third persons which injured the plaintiff's feelings was properly admitted under the allegations of general damage. (5 Odgers on Libel & Slander, 387; *Chisley* v. *Tompson,* 137 Mass. 137; *Craig* v. *Proctor,* 229 Mass. 339; *Garrison* v. *Sun P. & P. Assn.,* 207 N. Y. 1; *Bergmann* v. *Jones,* 94 N. Y. 51; *Reed* v. *Spear,* 107 App. Div. 144; *Cruikshank* v. *Gordon,* 118 N. Y. 178; *People* v. *Murphy,* 135 N. Y. 450; *Terry* v. *Green,* 185 App. Div. 517; *Hartman* v. *Morning*

*Journal Assn.,* 138 N. Y. 638.) The words being actionable *per se,* the testimony as to the acts and declarations of third persons was properly admitted to prove the extent of the circulation, the hurtful tendency and the resulting consequences of the defamatory words. (*Cyrowski* v. *P. A. Pub. Co.,* 196 Mich. 648; *Hubbard* v. *Allyn,* 200 Mass. 166; *M. Ins. Co.* v. *Buckner,* 98 Fed. Rep. 222; *Garrison* v. *Sun P. & P. Assn.,* 207 N. Y. 1; *Lopes* v. *Connolly,* 210 Mass. 487; *Wheeler-Stenzel Co.* v. *American Window Glass Co.,* 202 Mass. 471; *Lombard* v. *Lenox,* 155 Mass. 70, 71; *Schattler* v. *Daily Herald Co.,* 162 Mich. 115.) The testimony as to the acts and declarations of third persons was properly admitted to show that the publication of the article produced the effect it was intended to have. (*Garrison* v. *Sun P. & P. Assn.,* 207 N. Y. 1; *Sanderson* v. *Caldwell,* 45 N. Y. 398; *McLoughlin* v. *Welsh,* 10 Irish L. R. 19; *Goslin* v. *Corry,* 7 M. & G. 342; *Stafford* v. *M. J. Assn.,* 68 Hun, 467; 142 N. Y. 598; *O'Brien* v. *Bennett,* 72 App. Div. 367; *Weston* v. *Barnicoat,* 175 Mass. 454; *Rice & Baker* v. *Withers,* 9 Wend. 138; *Frey* v. *Bennett,* 4 Duer, 247; *Cyrowski* v. *Polish-American Publishing Co.,* 196 Mich. 648; *Hubbard* v. *Allyn,* 200 Mass. 166.) Testimony as to how Mrs. Bishop's feelings were affected when the article came to the notice of her child was properly admitted. (*Parker* v. *Republican Co.,* 181 Mass. 392; *Garrison* v. *Sun P. & P. Assn.,* 207 N. Y. 1; *Ott* v. *Murphy,* 160 Iowa, 730; *Dennison* v. *D. N. Pub. Co.,* 82 Neb. 675.) The testimony of the social secretary of the plaintiff to the effect that plaintiff changed her manner of dressing and her habits in going to hotels, restaurants and theatres as a result of the publication of the article was properly admitted. (*Stafford* v. *M. J. Assn.,* 68 Hun, 467; 142 N. Y. 598; *Sanderson* v. *Caldwell,* 45 N. Y. 398; *Finger* v. *Pollack,* 188 Mass. 208; *Farrand* v. *Aldrich,* 85 Mich. 593; *Garrison* v. *N. C. Printing Co.,* 87 N. J. L. 217; *Fuller* v. *Fenner,* 16 Barb. 333.)

29

HISCOCK, Ch. J. The plaintiff became involved in bitter matrimonial controversies with her husband. This led to their separation and later culminated in an action brought by her wherein she charged him with adulterous misconduct with various women and sought an absolute divorce which was subsequently granted. Counter allegations of misconduct upon the part of each were brought into court by preliminary motions in the divorce action. In one of these the husband filed affidavits charging his wife with excessive and persistent use of intoxicating liquors, with the result that an order had been made committing her to an institution for inebriates. On another application seeking an examination before trial of one of the corespondents named by the wife it was claimed that service of papers was obtained by resort to forgery. As a sequel to this last charge the attorneys for the corespondent who had thus been served wrote to the district attorney of New York county a letter calling to his attention the alleged criminal conduct of the process server and making various accusations against plaintiff involving the ones that she had been mentally unbalanced for some time and had been addicted to the excessive use of alcohol and drugs. A copy of this letter was sent to the publishers of various papers in New York city including the defendant. Plaintiff's counsel learning of this latter fact notified one of defendant's reporters who had charge of the matter that the accusations were untrue and must not be published. Notwithstanding this the defendant, through the action of such reporter, did publish an article which set forth at length the letter which it had received from the attorney as aforesaid and thereafter this action was brought against it for libel in making such publication.

It is conceded that some of the statements contained in the letter of which it published a copy, if untrue, were libelous *per se* and that, therefore, defendant is liable in damages both compensatory and punitive, although the

publication may have been due to the act of an injudicious and inaccurate reporter in violation of a general policy of care and fairness in reporting news.  But of course the defendant was entitled to have this liability carefully administered in accordance with established rules which fully secured its rights and protected it from responsibility for occurrences which were not the legal consequences of the publication complained of, and the applicability of these general principles was emphasized in this case by particular facts.  The nature of the article and the circumstances under which it was published after notice to the reporter were calculated to stir the antagonism and prejudices of a jury and the very large verdict of $45,000 which was rendered at least suggests the thought that this is what happened and that the jury exercised with liberal mind if not, passionate impulse the right which it enjoyed of inflicting upon the defendant punitive damages.  Under these circumstances, on review of the record, the justices of the Appellate Division were unanimously of the opinion that defendant's rights had not been properly protected and that substantial errors had been committed to its prejudice in the admission and exclusion of evidence.  That court, however, sought to eliminate the injurious effect of these errors and square the result with defendant's rights by reducing the verdict from $45,000 to $25,000.  We are unanimously of the opinion that errors affecting the course of a trial and infecting the entire verdict may not thus be cured on the speculation that their injurious effects, when measured by the size of the verdict, have not exceeded a certain amount.  The practice, of course, is familiar under which the excessive size of a verdict rendered at the end of a trial properly conducted may be corrected by the Appellate Division under the powers possessed by it to review the facts, by appropriate reduction, but no such power exists in such a case as is now before us and this was in result held by us in *Cohalan* v. *N. Y. Press Com-*

*pany, Ltd.* (212 N. Y. 344). We thus come to the question whether substantial errors were committed upon the trial as claimed by defendant. If it should appear that none were thus committed the result now standing in the case would be very unfair to plaintiff, for she would have been deprived of a substantial amount of her verdict without any adequate cause. We are convinced, however, that there has been no such miscarriage of justice as that but that errors were committed which entitled the defendant to have the judgment entirely reversed and a new trial granted.

Because they have been argued at length and may arise upon another trial we shall at the outset as briefly as may be dispose of certain questions which seem to us to be academic so far as the present record is concerned.

With much earnestness counsel argues that in a case of a publication libelous *per se* the law presumes damage to reputation and feelings which may be assessed by the jury under general considerations of the nature of the libel, the circumstances of its publication and the situation and standing of the plaintiff; that if a plaintiff seeks special damages for any particular injurious result outside of those thus presumed by law he must with appropriate completeness allege and claim such damages; that this plaintiff did not thus allege special damages but nevertheless was permitted to introduce evidence tending to establish the same. The general principles governing the allowance of general and special damages in such an action as this are well settled as counsel claims them to be. His deduction of error, however, is not in our judgment sustained.

The term "special damages" in a libel suit based upon an article not libelous *per se* is ordinarily applicable to cases where as the result of a libel occurrences have followed to the detriment of plaintiff which resulted in loss of a pecuniary nature. (*Pettibone* v. *Simpson,* 66 Barb. 492; *Terwilliger* v. *Wands,* 17 N. Y. 54, 59, 60;

*Pollard* v. *Lyon,* 91 U. S. 225.) If the same rule is to be applied in the case of an article libelous *per se* we are doubtful if the evidence which was admitted in the present case and of which complaint is made tended to establish special damages within the rule. But if we should assume otherwise we do not think that any right which the defendant had to the exclusion of this class of evidence upon this ground was properly protected by its trial counsel. (Not the one arguing this appeal.) This objection is based upon the form and allegations of the pleading. It is one which could have been corrected by amplification of the complaint if that were necessary and, therefore, it was the duty of the defendant to make plain its objection of inadmissibility under the pleadings if such was indeed the fault of the evidence. We find no such objection. The objections of the trial counsel were indeed multitudinous in number but they were not appropriate to this claim and this failure was such a waiver of any rights which the defendant had in this respect as to make this objection now unavailable. (*Bergmann* v. *Jones,* 94 N. Y. 51–58.)

But regarding the matter from another viewpoint, appellant contends that even though the evidence complained of did not tend to establish special damages which were not pleaded and, therefore, could not be proven, some of it did show specific slights upon and avoidance of plaintiff after the libel was published, thus tending to establish impairment of her reputation and standing and furnish a cause for mental distress, and that such evidence was incompetent because there was a presumption that such consequences would flow from the publication of the libel and this presumption could not be fortified by evidence of actual occurrences.

The question whether the presumption of injury to reputation and mental distress as a basis for general damages in the case of an article libelous *per se* may be supported by evidence tending actually to prove such

consequences does not seem to have been very authoritatively settled. We are inclined to the view that a plaintiff is not compelled to rely upon a favorable presumption with which the law endows his cause of action but that he may prove if he can that he has been avoided and shunned by former friends and acquaintances as the direct and well-connected result of the libel. This view finds support in some authorities. (*Nott* v. *Stoddard,* 38 Vt. 25, 30; *Kersting* v. *White,* 107 Mo. App. 265.) In the latter case evidence of a change in the attitude of former friends towards plaintiff was held to have been improperly received, but solely upon the ground that it was not shown that such change was attributable to the publication of the libel.

But if we are wrong in this view (*Sheftall* v. *Central of G. Ry. Co.,* 123 Ga. 589; *McDuff* v. *Journal Co.,* 84 Mich. 1) we again find that the appellant has failed to present such error by any appropriate objection and exception. The one instance of such evidence which is pressed upon our attention is that pertaining to the conduct of a certain Mrs. Redmond and there is no objection which presents in connection with her evidence the question which plaintiff seeks to argue.

This inadvertence, unfortunate from defendant's standpoint, of defendant's counsel in failing to take appropriate objections and exceptions also prevents us from considering the questions which are argued in connection with the admission of another line of testimony. We refer to the testimony given by plaintiff's secretary that she repeated to the former remarks made by shopkeepers with much resulting distress to plaintiff. As this evidence was introduced we believe that it was incompetent but; as stated, we find no objection which calls upon us to decide this question.

Passing, therefore, these allegations of error which rest upon no basis entitling us to consider them, we come to the consideration of other allegations of error which we

think are well founded and based upon adequate objections and exceptions. These objections and exceptions were not at all times taken in a very precise and satisfactory manner, but a careful consideration of the record leads us to believe that they are sufficient in each case to present the questions which we shall now consider. (*Gangi* v. *Fradus,* 227 N. Y. 452.)

1. Evidence was permitted of statements of friends of the plaintiff that the article in question was " perfectly outrageous," blaming plaintiff for going to Sherry's the evening after its publication and to the effect that it would be better for her not to " come around until after all this notoriety is over because it is too dreadful." By this evidence there were placed before the jury opinions of third persons as to the gravity of the libel which it was for the jury alone to draw and we know of no theory under which such evidence was competent, and it was not harmless. (*Turner* v. *Hearst,* 115 Cal. 394.)

2. Plaintiff's social secretary, covering a period of six months after the libel was published, was permitted to testify to a change in Mrs. Bishop's habits. Quoting her testimony it was said that " Instead of going into a dining-room as she had done we would sort of sneak into the grill or sneak into some unpretentious little place and have something to eat. In the hotel she would go in the back way so no one would see her. She would take a back seat in the theater where previously she had gone to a box. She would wear a veil so people could not tell her and would not know who she was."

In the first place it may be doubtful whether these changes in plaintiff's habits, assuming that they actually occurred as stated without simulation, were the direct and proximate result of the publication of the libel. As has already been stated plaintiff's marital conflicts with her husband had become a subject of public proceedings in court, from which it may be assumed that more or less unfavorable notoriety had ensued. In fact the witness

who gave this testimony stated that plaintiff's divorce proceedings had affected her " some " at this time and it very well may be that therein lay the cause of any change in her habits.

But assuming that the proof excludes any permissible inference that the acts described by this witness may have been the result of other causes, we think that this evidence goes farther than is safe or permissible in detailing conduct of a plaintiff and ascribing it to the publication of a libel. The mental distress resulting from a libel for which damages may be recovered may to a certain extent be proved by acts and physical appearances such as those which accompany the plaintiff's first view of the article, which are in the nature of exclamations or which are beyond the control of the plaintiff. (*Finger* v. *Pollack,* 188 Mass. 208; *Farrand* v. *Aldrich,* 85 Mich. 593; *Nott* v. *Stoddard,* 38 Vt. 25; *Fuller* v. *Fenner,* 16 Barb. 333.)

But the acts here portrayed were not of any such class. They extended over a long period after the publication and they were voluntary actions upon her part, which were the subject of simulation and deceit, and altogether we think of a character too dangerous to be made the basis of damages. The question may be tested somewhat by a consideration of the evidence which would be allowed in an action for alleged negligence in injuring the plaintiff's leg. Undoubtedly evidence would be permitted that at the time of the alleged injury the plaintiff uttered an exclamation of pain but, the injury being disputed, we can scarcely conceive of it that a witness would be allowed to give entirely disconnected evidence that six months after the alleged injury the plaintiff was seen to limp.

3. While the errors committed in the admission of the foregoing lines of evidence are substantial, the injury inflicted by such testimony must have been almost inconsequential as compared with that which the defend-

ant suffered from the admission of other testimony now to be referred to.

The plaintiff was permitted to testify at length concerning the conduct, statements and distress of her little child who was only about seven years old at the time the libel was published. Amongst other things she was permitted to say that the child picked the article up from her desk and read it; that she then came to plaintiff with tears in her eyes and hung to her and said, " ' Ma, you are not crazy, tell me you are not crazy. I *shall be* afraid of you if you are crazy,' and I cannot tell you the distress that child went through; " that after that the child went to see its father and begged plaintiff to tell her she was not insane; " she had to sleep in my room with me and she was begging to go up to her father's and she said, ' Ma, are you really crazy, I am afraid to sleep here with you alone, the children tell me you are not right. * * * Is there anything, could you tell me it was not so? ' I said, ' Of course, it is not so; ' " that the child was heartbroken; that she said " ' Mama, when I go in the park, the nurses say ' you must not play with this little girl, her mother is crazy.' ' " And then plaintiff was permitted to say that she was distressed and heartbroken because of the distress of her child. In answer to the question " How did that statement of that child make you feel? " she answered " I told you I felt as if I was dead. I did not have any feeling. I cannot tell you how I felt. Can any one imagine, who has children, that a child would be afraid of you? "

Of course it is unnecessary to dwell at length upon the effect which this evidence must have had upon the jury and the seriousness of the error which was committed, if error it was, in admitting it. Nothing would be more apt to stir the emotions of the jury than evidence of the distress of this little child who would be regarded as the innocent victim of defendant's wrongful publication, and, therefore, I pass to the consideration of the question

whether it was incompetent. In doing so we, of course, spend no time in considering the question whether it is probable that a little child seven years old would have taken and read and talked about the article in question as plaintiff says she did, for respondent's counsel is entirely correct that whatever we may think this was something for the consideration of the jury. Accepting, however, the testimony as true we think that serious error was committed in its reception. The main argument, as we understand it, which is made in favor of the reception of the evidence is that it tended to show that plaintiff was feared and shunned by her daughter and that, therefore, it was competent in support of general damages. Assuming as we have done before, that evidence of specific slights and avoidance of plaintiff would be competent for such a purpose, we are not able to regard this evidence as fairly belonging to that class. While there are one or two statements to the effect that the child said she would be afraid of plaintiff if she were crazy and that she was afraid to sleep with her alone, the evidence further shows that she wanted to know if her mother could not tell her that " it was not so " and that the mother assured her that " Of course, it is not so," and there is no evidence to indicate that as matter of fact the child shunned or avoided her mother for a moment. On the contrary, we are repeatedly told how the child in these interviews " threw her arms around " plaintiff and " hung " to her — certainly not signs of fear or avoidance. The substance of the evidence as a whole is devoted to showing that the child was ostracised and suffered great mental distress as the result of the libel and that this distress reacted on the plaintiff.

Even if yielding to the influence of the word " fear," used two or three times in the evidence, we should be otherwise inclined to hold that some of this evidence standing by itself would have been competent to show fear and avoidance of the plaintiff, we think that such interpre-

tation of the evidence as a whole would be forbidden by what was said by the justice in admitting it. Before this line of evidence commenced he said in answer to plaintiff's counsel referring to a ruling already made, " so far as the daughter's reading of the article and what she said with respect to her mother and in respect to the way the article affected the child, it may be told, but in so far as it tends to establish any claim that the daughter *abandoned* her mother by reason of the article I cannot receive it." Again, after the plaintiff had testified to " the distress that the child went through," and a motion had been made by defendant's counsel to strike out the evidence on the ground that it was not an action for distress of the child, the court denied the motion, saying " she (the plaintiff) may show that a member of the family was affected by the article and that effect upon the member of the family was visited upon her mind by the distress of the child." Thus was made perfectly plain the purpose and purport of the testimony which was offered. Court and counsel understood that they were dealing with mental distress of the child as a cause of mental distress to plaintiff, and it was an entirely appropriate application and illustration of this theory that in response to independent questions and over separate motions plaintiff was subsequently permitted to give testimony of the statements of the daughter that she was ostracised because of the libel. This was not a case of admitting evidence inherently competent upon some erroneous theory or under some classification which was faulty in some technical and inconsequential sense. It was a case of admitting and permitting a jury to consider evidence for a distinct and important purpose — one which, as we shall presently state, we think was improper. It very well might be in view of the evidence which we have quoted that the jury would never have reached the conclusion that this child actually shunned or avoided its mother, but on the other hand

would readily conclude that the child did suffer great mental distress as the result of the libel which reacted upon plaintiff. Therefore, ultimately and upon the evidence as now presented the plaintiff is compelled to meet the question whether a plaintiff in such an action as this may show that a member of her family has been ostracised and distressed with the result of distressful reaction upon herself as an element of additional and increased damages.

We think that question must be answered in the negative. We do not believe that there is any well-established rule or well-considered authority which sustains the admission of such testimony. It is true that the case of *Ott* v. *Murphy* (160 Iowa, 730, 743) does hold that such evidence may be properly admitted for the purpose of proving the mental distress of the plaintiff, but the decision in that case is predicated upon authorities which do not fairly sustain it.

In *Flam* v. *Lee* (116 Iowa, 289), which was an action to recover damages for malicious prosecution, plaintiff for the purpose of showing mental suffering was permitted to prove the distress of a member of his family at the time the arrest was made. We think that under those circumstances the evidence might be regarded as competent as tending to show the entire transaction of the arrest and its incidents.

In this state we have held that a plaintiff may go so far as to show the nature of his business and that he is a married man as tending to show the circumstances surrounding him and as bearing upon the hurtful tendency of the libel and the general damage to which he has been exposed. (*Morey* v. *Morning Journal Assn.*, 123 N. Y. 207; *Enos* v. *Enos*, 135 N. Y. 609.)

The same rule has been adopted in California (*Cahill* v. *Murphy*, 94 Cal. 31), and in other states it has been distinctly held that evidence of the distress of a member of plaintiff's family may not be given. (*Sheftall* v.

*Central, etc., Ry. Co., supra; Dennison* v. *Daily News,* 83 Neb. 675.)

There are many reasons which lead us to think that the rule thus far established by our courts should be maintained and not be so extended as to permit evidence of the character which was offered and received in this case.

For the reasons given we reach the conclusion that the judgments should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, J. (dissenting).  I am unable to concur in the judgment of the court.

The plaintiff was permitted to state that the writing came into the hands of her daughter, a little child, and to describe the daughter's fear.  " She came with tears in her eyes, and hung to me," and said, " Ma, you are not crazy, tell me you are not crazy; I shall be afraid of you if you are crazy."  The child was appeased, but later became agitated again.  She was afraid to sleep in the mother's room, and begged to be sent away to her father.  " Ma, are you really crazy, I am afraid to sleep here with you alone, the children tell me you are not right, I saw this in the paper.  Could you tell me it was not so? "

I find no error in the ruling.  The plaintiff was free to show that she was feared and shunned by friends.  The aversion and fear did not cease to be a consequence of the libel when felt by her own child.  There was no way of proving those emotions except by the words and conduct of the child herself.  The words were not hearsay. They were part of the *res gestæ,* and admissible as verbal acts (*Cyrowski* v. *Polish Am. Pub. Co.,* 196 Mich. 648, 655; *Weston* v. *Barnicoat,* 175 Mass. 454, 456; *Hubbard* v. *Allyn,* 200 Mass. 166, 174; *Hine* v. *N. Y. El. R. R. Co.,* 149 N. Y. 154, 162).  Repulsion due to fear, if awakened by the libel, may be proved just as much as

repulsion due to scorn. This child would not sleep with her mother, and begged to be sent away and allowed to join the father. One finds it hard to know how shrinking and aversion are capable of proof, if they are not proved by these entreaties.

It is said that in accepting such testimony we permit the mother to recover, not merely for her own pain of mind resulting from the libel and from its effect upon her own good name, but also for the aggravation of pain of mind that may have come from witnessing the pain of others who were dear to her. I shall assume, though it is unnecessary to decide, that the testimony would have been inadmissible if directed to that end alone (*Dennison* v. *Daily News Pub. Co.*, 82 Neb. 675; *contra*, *Ott* v. *Murphy*, 160 Ia. 730; *Cahill* v. *Murphy*, 94 Cal. 29; and *cf. Enos* v. *Enos*, 135 N. Y. 609, 612; *Garrison* v. *Sun Printing & Pub. Assn.*, 207 N. Y. 1). The assumption does not condemn the ruling, for other ends were served. The daughter's fear was not proved because the sentiment of fear is painful, and surely not for that reason to the exclusion of any other. The daughter's fear was proved because fear is a token of aversion. The injury to the mother was not merely that she was unhappy in the child's unhappiness. The injury to the mother was that she was unhappy in the child's estrangement. One sentiment is not the less provable because it coalesces with another. The pain of isolation remains, though the pain of sympathy is with it.

We are told that the evidence, though competent, must be treated as if incompetent because the court misnamed, or did not accurately name, the emotion to be proved. Slight and subtle was the misnomer, if there was any. We are asked to decide the case on the assumption that the subtlety did not escape a discriminating jury, but to an extent controlled the verdict. Fear is a phase or symptom of distress. Pain of mind, though induced by terror, remains pain, and nothing

else. It would be a narrow ruling that would reverse this judgment because the trial judge in deciding to admit the evidence, spoke of the child's emotion as distress, and failed to characterize it as fear. The rights of litigants do not depend upon adherence to these verbal niceties in the heat and fervor of a trial. We review the ruling, not the comment.

A closer question is involved in other statements of the child, made at the same time, as part of the same transaction. In pleading to go to the father, she said: " Mama, when I go in the park the nurses say, you must not play with this little girl, her mother is crazy."

The plea was a revelation of shrinking and of fear. Words that reveal the emotion of the speaker are not to be excluded because coupled with them, too closely to be disentangled, is a description of the conduct or feelings of another. " Generally speaking, admissible evidence is not made inadmissible by carrying with it some collateral fact disadvantageous to the other side, which of itself could not be put in proof " (*Weston* v. *Barnicoat*, 175 Mass. 454, 456). Good and bad were inseparably commingled here. The same words that told of ostracism suffered told also of fear aroused. The mother, when questioned by the frightened child, denied that she was insane. The child's belief to the contrary was not dispelled by the denial. She revealed the belief and its persistence in quoting the nurse's statement that she had a crazy mother, and in begging to be allowed to go. What she said was not evidence of the truth of the incident described. What she said was evidence of the persistence of a state of mind. It was part of a single narrative of agitation and alarm. There was a remedy against misconception by the jury, but the defendant did not seek it. The remedy was to be found in instructions that would assign to the statement its appropriate significance, and limit its effect accordingly. No such instructions were requested. The ruling was

on a motion to strike out the statement altogether. We may say of the ruling that it touches the borderland of error. I think it does not cross the line.

There is no need to dwell, however, upon possible excesses in the form of the narrative as distinguished from the substance. The judgment about to be announced does not limit itself to the correction of such excesses, if they exist. It condemns the narrative as a whole, utterly and sweepingly. It says in effect that a mother held up to an infant child as insane, may not prove in aggravation of her damage that the child exhibited fear and repulsion when informed of the insanity. It does not place the conclusion upon any defect of pleading. Defects of pleading, if they existed, are conceded to have been waived. It goes down to the bedrock of substance, and founds its conclusion there. The result is a restriction of liability for the consequences of defamatory writings to which I am unable to assent.

I find it unnecessary to consider minor rulings assigned as error in the majority opinion. It is enough to say that some appear to me to be correct; that others are not challenged by objection and exception; and that still others, if erroneous, are so unsubstantial, when read in the light of the whole record, that they cannot reasonably be regarded as affecting the result.

The judgment should be affirmed with costs.

Pound, McLaughlin and Andrews, JJ., concur with Hiscock, Ch. J.; Hogan and Crane, JJ., concur with Cardozo, J.

Judgments reversed, etc.