THE NEW YORK WOMAN, INC., and Others, Plaintiffs, *v.* NEW YORK EVENING JOURNAL, INC., and Another, Defendants.

Supreme Court, Trial Term, New York County, October 16, 1939.

*Abraham L. Pomerantz [Theodore Kiendl* of counsel], for the plaintiffs.

*McCauley & Henry [Charles Henry* of counsel], for the defendant Farnsworth.

*Isidore Halpern,* for the defendant New York Evening Journal, Inc.

PECORA, J. This libel action on trial before this court and a jury, is brought in behalf of a corporation (now bankrupt) which, at the time of the publication of the alleged libel, was engaged in the business of publishing a weekly magazine called *The New York Woman*. The article complained of was published in defendants' newspaper on December 1, 1936, and consisted of the following

words: " Reports persist that *New York Woman* (the mag) may run up the white flag soon." The three trustees in bankruptcy are joined as coplaintiffs, but together with the corporation they are hereinafter referred to in the singular.

The plaintiff claims that such publication greatly injured it in its credit, business, circulation and advertising, and caused it to cease publication of its magazine and to file a petition in bankruptcy on April 26, 1937, for which it seeks general damages amounting to $1,500,000.

The complaint further contained several allegations of special damages aggregating about $450,000. The items of special damage included loss of certain advertising orders and accounts, curtailment of certain credits, diminution of subscriptions and circulation, and inability to raise needed working capital through the sale of its stock to the public.

The defendants admit the publication, but plead its truth. They also allege affirmatively that plaintiff's bankruptcy and its cessation of the publication of its magazine were due to causes wholly unrelated to the publication of the alleged libel.

At the end of the plaintiff's case, defendants moved to dismiss all the allegations of special damage because of failure of proof. As the trial justice, I granted that motion. Thereupon defendants moved to strike out most of the testimony introduced by plaintiff to sustain its claims of special damage. The plaintiff, in opposing this motion, urges that such testimony may properly be considered by the jury in support of the presumption of general damage. The learned counsel on both sides acknowledge their inability to find a single adjudication based on the precise factual elements involved in this case. In deciding the motion, therefore, recourse will be had to analogy and reasoning.

It seems to me that the case of *Bishop* v. *New York Times Co.* (233 N. Y. 446) is a guidepost which points the way to the decision which must be made.

It is well established that where the immediate tendency of a defamation is to impair the plaintiff's reputation or credit, general damages will be presumed to have followed as a natural or probable consequence. Such damages are inferred by law where the words are actionable *per se*, and hence need not be proved by evidence. (Odgers on Libel and Slander [6th ed.], p. 305; Seelman, The Law of Libel and Slander, pp. 382, 383.)

The plaintiff contends that, in seeking to recover general damages, it need not rest its claim solely upon this presumption with which the law clothes it, but may in addition offer proof to show the direct tendency of the defamation to cause such damage. This argument

finds strong support in the *Bishop* case (*supra*) where the Court of Appeals said (p. 454): " We are inclined to the view that a plaintiff is not compelled to rely upon a favorable presumption with which the law endows his cause of action, but that he may prove if he can that he has been avoided and shunned by former friends and acquaintances as the direct and well-connected result of the libel." Sanction for it may also be found in Odgers on Libel and Slander ([6th ed.], p. 318) where that recognized author states that, " where it is clear that the action lies without proof of any special damage, any loss or injury which the plaintiff has sustained in consequence of the defendant's words, even after action brought, may be proved *to support the legal presumption,* and to show from what has *actually* occurred how injurious and mischievous those words were." (Italics mine.)

It is true that in the *Bishop* case the defamation was of a nature to injure the plaintiff in her reputation and character, rather than to cause damage to her business or credit. But the principle involved is most certainly the same. According to the *Bishop* case, proof is admissible to show that one libeled by words injuriously affecting his personal character and reputation has been avoided by former friends in consequence of such libel. I can see no reason why that principle should not be applied to the case at bar. Here, the words of the defendants may be regarded as affecting detrimentally the business and credit of the plaintiff corporation in its business of publishing a magazine. Hence the testimony of advertising agents to the effect that, because of the defendants' words, they removed plaintiff's magazine from their lists as a suitable advertising medium, or discontinued recommending it as such to their clients, should be equally admissible to support the presumption of general damage. This is, of course, also true of any testimony given by a creditor of the plaintiff respecting any curtailment of credit as a result of such words.

In view of the presumption of general damage which the law gives to the plaintiff, the jury might legally award compensation to plaintiff on the mere inference that plaintiff lost credit and business because of defendants' words; and yet there might not actually have been such a loss. Surely, then, defendants cannot logically complain if plaintiff undertakes to submit proof to support the presumption of such loss, by showing its actuality. The law permits the jury to speculate that such a loss has occurred. It, therefore, should not frown upon the presentation to the jury of intrinsically competent evidence purporting to show that the damage which is presumed has in fact flowed from the alleged defamation.

The motion to strike out the testimony is, therefore, granted except as to the following testimony, which will remain in the case as proof in support of the presumption of general damage: (a) The testimony of Odell and Rau as to changes in credit terms given to plaintiff; (b) the testimony of Duffy as to the decision by Batten, Barton, Burstine & Osborne, Inc., not to recommend plaintiff's magazine as an advertising medium; (c) the testimony of Underhill as to the removal of plaintiff's magazine from his agency's active list of advertising mediums; and (d) the testimony of Kron respecting the withdrawal by his agency to its clients of the recommendation of plaintiff's magazine for advertising purposes, which it had previously made.