Bradley **ROBINSON**, Plaintiff,

v.

**BANTAM BOOKS, INC.** and **Rand Mc-Nally & Company**, Defendants.

**No. 69 Civ. 5311.**

United States District Court,
S. D. New York.

Jan. 14, 1972.

See also D.C., 49 F.R.D. 139.

and Rand McNally & Co.; Joseph M. Costello, New York City, of counsel.

Rodwin & Rodwin, New York City, for defendant Pauline K. Angell; Richard Rodwin, New York City, of counsel.

## OPINION, FINDINGS OF FACT and CONCLUSIONS OF LAW AFTER INQUEST

LEVET, District Judge.

Plaintiff, Bradley Robinson (Robinson), author of a book entitled, "Dark Companion," sued defendants Bantam Books, Inc. (Bantam), Rand McNally & Company (Rand), and Pauline K. Angell (Angell) because of said defendants' alleged infringement of plaintiff's book by defendants' publication of a book authored by Angell entitled, "To the Top of the World." Plaintiff further alleged libel because of a statement appearing on the jacket of the hardcover Rand edition and on the cover of the paperback Bantam edition. Angell answered; defendants Rand and Bantam did not appear, answer or plea in this action.

By order of this court dated January 6, 1970, Judge MacMahon, after reciting default of the defendants Bantam and Rand, directed as follows:

"* * * there being no just reason for delay of entry of this judgment and that the following shall not terminate this action as to plaintiff's claims against defendant PAULINE K. ANGELL, it is

"ORDERED, ADJUDGED AND DECREED, that the plaintiff recover from the defendants BAMTAM BOOKS, INC. and RAND McNALLY & COMPANY the damages sustained by him on account of the claims for relief demanded in the complaint, a copy of which is attached hereto as Exhibit No. A, together with interest, costs of this action and reasonable attorneys' fees, and it is further

"ORDERED, ADJUDGED AND DECREED, that this matter be placed on the calendar of this court for the taking of an inquest, and it is further,

---

Liddy, Sullivan, Hart, Daniels & Baxley, New York City, for plaintiff; Francis J. Sullivan, New York City, of counsel.

D'Amato, Costello & Shea, New York City, for defendants Bantam Books, Inc.

"ORDERED, ADJUDGED AND DECREED, that at such inquest the court shall assess damages sustained by the plaintiff and that the court shall enter judgment accordingly."

No jury trial was demanded and, hence, the court conducted an inquest on October 1, 1971, at which both plaintiff and defaulting defendants, Rand and Bantam, appeared and participated. Counsel for the non-defaulting defendant, Pauline K. Angell, appeared as an observer only. Subsequently, counsel for plaintiff and for the defaulting defendants submitted Proposed Findings of Fact and Conclusions of Law and memoranda on the sole question remaining as to said defendants, namely, damages (and attorneys' fees to be awarded).

This proceeding concerns only the assessment of damages against defaulting defendants Rand and Bantam. It does not terminate plaintiff's claims against Pauline K. Angell.

After hearing the testimony of the parties, examining the exhibits, pleadings and Proposed Findings of Fact and Conclusions of Law and post-inquest memoranda submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. In 1946 Bradley Robinson wrote a book called, "Dark Companion." "Dark Companion" was first published by Robert M. McBride & Co. in 1947, at which time between 3,000 and 5,000 copies were published. The only money that Bradley Robinson received from McBride & Co. was $500.00 (107, 110) [1]

2. Plaintiff, Bradley Robinson, secured the exclusive rights and privileges in and to the copyright of "Dark Companion" by an assignment, dated April 10, 1962, to him of the copyright obtained by Outlet Book Company as assignee of the Trustee in Bankruptcy of Robert M. McBride & Co., which company had originally obtained from the Register of Copyrights Certificate of Registration No. 13935, Class A (Complaint, ¶ 8).

3. Subsequent to the original printing of "Dark Companion" by Robert M. McBride & Co., 1947, Bradley Robinson made many attempts to have his book republished. In 1950 and 1951 Bradley Robinson tried to sell his book, "Dark Companion," to a paperback publisher but was unsuccessful (111). In 1953 Bradley Robinson again attempted, through an agent, to get "Dark Companion" published in paperback but was unsuccessful (113). In 1952 Bradley Robinson contacted a film agent, one Audrey Woods, for the purpose of getting her interested in trying to get the book made into a movie. This venture was unsuccessful (111). During 1958 or 1959 Bradley Robinson wrote to ten or fifteen publishers trying to get them interested in printing "Dark Companion" in hardcover. These attempts were unsuccessful (113). In 1961 and 1962 Bradley Robinson continued his efforts to get paperback book publishers interested in his book. These ventures were unsuccessful. In 1961 and 1962 Bradley Robinson's wife, acting in his behalf, tried to interest Walt Disney Studios, Stanley Kramer Studios and Sidney Poitier in making a movie of the book. These ventures were unsuccessful (116).

4. On April 11, 1967 Fawcett Publications Inc. published a revised edition of "Dark Companion" by Bradley Robinson, at which time 50,484 copies were printed. Fawcett published a second edition in August of 1969, at which time 30,534 copies were printed (91, 95).

5. In the 1967 and 1969 Fawcett Publications revised editions of "Dark Companion" there was the notation: "Copyright 1947 by Robert M. McBride & Company, copyright 1967 by Bradley Robinson. First Fawcett premier printing April 1967" (95, Ex. G).

6. In 1967 Bradley Robinson received an advance from Fawcett Publications Inc. of $1,500 for "Dark Companion" (95, 119). The net total that Fawcett

[1]. Unless otherwise identified, numbers in parentheses refer to pages in the trial transcript.

Publications Inc. has received from the sale of "Dark Companion" is $1,110 (96–97).

7. Plaintiff has offered no proof of actual damage sustained as a result of the publication and sale of the infringing work. At the inquest there was no proof of loss by plaintiff unless it related to sales by defendants (71–72).

RAND:

8. Sales.

Rand printed approximately 14,000 copies of the infringing book "To the Top of the World" (11, 41–42, Ex. A).

As of August 23, 1971 approximately 13,000 copies of "To the Top of the World" have been sold by Rand (14–15, Ex. A). The total gross sales realized by Rand on the sale of "To the Top of the World" is $34,737.89 (12, 14–16, 21, 27, 37, 58, Ex. A). This is the total amount received by Rand from the sale of that book. The total cost of publication of "To the Top of the World" incurred by Rand is $36,201.46 (Ex. A).

9. Costs.

In publishing "To the Top of the World," Rand incurred the following costs:

Costs of Sales

Creative Costs

| | | |
|---|---|---|
| Plant | $4,662.00 | |
| Outside Art Purchases | 150.00 | |
| Outside Typing Purchases | 100.00 | $ 4,912.00 |

Manufacturing Costs

| | | |
|---|---|---|
| 1st Printing | $4,474.00 | |
| 2nd Printing | 3,800.00 | |
| 3rd Printing | 2,956.92 | $11,230.92 |

| | |
|---|---|
| Royalty payments to Pauline K. Angell | $ 6,148.98 |
| Selling Expense and Overhead at 40% of Net Sales | $13,909.56 |
| TOTAL COSTS | $36,201.46 |

(37–52, Ex. A).

10. In the publication of "To the Top of the World" Rand sustained a loss of $1,427.57 calculated as follows:

| | |
|---|---|
| Net Sales | $34,773.89 |
| Less: | |
| Publication cost | $36,201.46 |
| LOSS | $ 1,427.57 |

(67, Ex. A).

———◆———

Pursuant to a royalty guarantee agreement Rand received $2,250 from Bantam, of which Rand paid $1,125 to Pauline K. Angell (67–68, Ex. A). Therefore, Rand's total net sales were $37,023.89 and the total cost of publication and sale was $37,326.46. In conclusion, for the publication and sale of "To the Top of the World" Rand sustained a net loss of $302.57.

11. In summary I find that Rand:

(a) Printed a total of approximately 14,000 copies of "To the Top of the World."

(b) Sold or distributed a total of approximately 13,000 copies of "To the Top of the World."

(c) Received from the sale of "To the Top of the World" $37,023.89.

(d) Incurred a total cost for the publication and sale of "To the Top of the World" of $37,326.46.

(e) Sustained a net loss from the publication and sale of "To the Top of the World" of $302.57.

BANTAM:

12. Sales.

Bantam first published a paperback edition of "To the Top of the World" by Pauline K. Angell under license from Rand McNally in March of 1966. There were two printings published by Bantam, the "regular" edition published in March of 1966 and a special edition published for the United States Information Agency (USIA) in November of 1966 (77, 79, 84, 86).

Bantam printed a total of 72,000 copies of "To the Top of the World." 46,000 copies were published for the "regular" edition and 26,000 copies were printed for the "USIA" edition (87–88, Ex. F). Out of the 46,000 copies printed for the "regular" edition, Bantam shipped 27,000 copies to wholesalers and retailers (81, 88, Ex. F). Out of the 27,000 copies that were shipped, 15,000 copies were returned (82, Ex. F). Bantam sold 12,000 of the "regular" edition for a net sale of $3,552 (82, Ex. F). Therefore, Bantam's gross profit was $2,632 (Ex. F). Bantam, furthermore, incurred an overhead cost in printing the "USIA" edition of $832 (Ex. F). Bantam made a net profit of the "USIA" edition of $1,791 (84, Ex. F). In the publication and sale of the "regular" and "USIA" editions Bantam sustained a loss of $2,694 (85–86, Ex. F).

13. Costs.

Bantam realized a net sale of $3,552 on the sale of the 12,000 copies of the "regular" edition (Ex. F). In printing the 46,000 copies of the "regular" edition Bantam incurred a manufacturing cost of $3,850. Furthermore, as a royalty or guarantee on the "regular" edition Bantam paid Rand $2,000. Therefore, the cost incurred by Bantam for printing the "regular" edition was $5,850 (83, Ex. F). Bantam's gross loss was $2,298 (Ex. F). Furthermore, Bantam incurred an overhead cost of $2,187 (83, Ex. F). In printing the "regular" edition Bantam sustained a net loss of $4,485 (83, Ex. F).

Bantam sold the 26,000 copies of the "USIA" edition at a price of $.20 per copy, yielding a net sale of $5,200. Bantam accepted no returns of the "USIA" edition (85, Ex. F). In printing the 26,000 copies of the "USIA" edition Bantam incurred a manufacturing cost of $2,327 (Ex. F). As a royalty or guarantee on the "USIA" edition Bantam paid Rand $250 (Ex. F).

14. In summary I find that Bantam:

(a) Printed a total of 72,000 copies of "To the Top of the World."

(b) Sold or distributed a total of approximately 38,000 copies of "To the Top of the World."

(c) Received from the sale of "To the Top of the World" $8,752.

(d) Incurred a total cost for the publication and sale of "To the Top of the World" of $11,446.

(e) Sustained a net loss from the publication and sale of "To the Top of the World" of $2,694.

15. There appears on the jacket of the hardcover "Rand" edition and on the cover of the paperback "Bantam" edition the following libelous statement:

"Much has been written about Arctic explorers and exploration, but there is no other book that tells of the relationship between these two amazing men."

Plaintiff has introduced no proof of the amount of damages sustained as the result of the libel (53, 69–70).

16. I find that plaintiff is entitled to an award of damages of $.10 for every copy of the infringing book sold. Therefore, for the 13,000 books sold or distributed by Rand plaintiff is entitled to an award of $1,300, and for the 38,000 books sold or distributed by Bantam, an award of $3,800.

I further find that plaintiff is entitled to a permanent injunction, permanently enjoining defendants from infringing said copyright in any manner and from publishing, marketing, selling or otherwise disposing of any copies of the book entitled "To the Top of the World" or of any publication containing a condensation of said work.

## DISCUSSION

Plaintiff, Bradley Robinson, is the author of the book "Dark Companion," first published by McBride & Co. in 1947. Plaintiff has been awarded a default judgment on the question of liability against defendants, Rand McNally & Co. and Bantam Books Inc., for copyright infringement and libel. The infringing work published by defendants is "To the Top of the World" by Pauline K. Angell. The libelous statement before mentioned appeared on the jacket of the hardcover edition by Rand and on the cover of the paperback edition by Bantam. The sole issue for the court is the amount of damages to be awarded for copyright infringement, libel and attorney's fees as against defendants Bantam and Rand.

## COPYRIGHT INFRINGEMENT

The rights of the parties, regarding the assessment of damages, are governed by the United States Copyright Law, Title 17, U.S.C. § 101.

By the Act an infringer becomes liable—

"To pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement, as well as all the profits which the infringer shall have made from such infringement, and in proving profits the plaintiff shall be required to prove sales only, and the defendant shall be required to prove every element of cost which he claims, or in lieu of actual damages and profits, such damages as to the court shall appear to be just . . ."

Under the statute defendants are liable for all damages suffered by plaintiff as the result of the infringement. At the inquest plaintiff produced no direct evidence regarding any damages suffered as the result of the infringement. In fact, plaintiff conceded that he was producing no evidence of actual damage sustained (53, 69–70). There has been no proof of any damage or loss by plaintiff unless related to some sales by defendants.

On several occasions plaintiff, Bradley Robinson, attempted to get publishers interested in republishing his book but was unsuccessful. Bradley Robinson attempted to get movie producers interested in making a movie out of his book but was unsuccessful. Plaintiff was finally successful in having his book republished in 1967 by Fawcett Publications Inc. However, the sales of the Fawcett editions were dismal, amounting to $1,110. It is clear that plaintiff has suffered nominal damages as a result of the publication of defendants of "To the Top of the World."

## PROFITS

Under the statute plaintiff is entitled to recover "all the profits which the infringer shall have made . . . and in proving profits the plaintiff shall be required to prove sales only."

Plaintiff has met his burden of proving the sales of defendants. Defendant Rand has sold approximately 13,000 hardback copies and defendant Bantam has sold 38,000 paperback copies of "To the Top of the World."

Under the statute, in assessing damages, the infringer is required to prove "every element of cost which he claims . . . . " Defendants, Rand and Bantam, have met their burden of proving the cost of publication. It cost Rand $37,326.46 and Bantam $11,446 to publish the infringing work, "To the Top of the World." In the publication and sale of "To the Top of the World" Rand has incurred a net loss of $302.57, while Bantam has incurred a net loss of $2,694.

156

It is obvious that "To the Top of the World" has not been a financial success. In fact, both "Dark Companion" and "To the Top of the World" have been financially unsuccessful.

■ Where damages do not exist and profits are nominal it is within the court's discretion to revert to the "in lieu" provision of the statute in awarding damages. Mr. Justice Jackson, commenting on the court's discretion in F. W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 73 S.Ct. 222, 97 L.Ed. 276 (1952) said:

"Lack of adequate proof on either element [damages or profits] would warrant resort to the statute in the discretion of the court, subject always to statutory limitations . . . . We think that the statute empowers the trial court in its sound exercise of judicial discretion to determine whether on all the facts a recovery upon proven profits and damages or one estimated within the statutory limits is more just." (At 233–234, 73 S.Ct. at 225–226)

Some courts have strictly construed the statute, holding as the Ninth Circuit has in Shapiro, Bernstein & Co. v. 4636 S. Vermont Ave., 367 F.2d 236 (9th Cir. 1966) that:

". . . it is important to emphasize that the judicial discretion to be employed in choosing between proven profits and damages on the one hand and the statutory limits on the other only comes into play when profits *and* damages have actually been proved, and unless they have, the court *must* apply the statutory standard." (At 240)

See also, L. A. Westermann Co. v. Dispatch Printing Co., 249 U.S. 100, 39 S. Ct. 194, 63 L.Ed. 499 (1919); Jewell-La Salle Realty Co. v. Buck, 283 U.S. 202, 51 S.Ct. 407, 75 L.Ed. 978 (1931); Douglas v. Cunningham, 294 U.S. 207, 55 S.Ct. 365, 79 L.Ed. 862 (1935).

In the case at bar, plaintiff has not proved that he has suffered actual damages as the result of the publication of the infringing work. Furthermore, it has been sufficiently demonstrated that defendants have gained no profits as the result of the publication and sale of "To the Top of the World." Therefore, it is clearly within the discretion of the court to revert to the "in lieu" provision under the statute.

The "in lieu" provision of the statute provides:

"in lieu of actual damages and profits, such damages as to the court shall appear to be just . . . ."

In reverting to the "in lieu" provision the court may allow as damages "the amounts as hereinafter stated." Accordingly, Section b provides:

"Second. In the case of any work enumerated in section 5 of this title . . . $1 for every infringing copy made or sold or found in the possession of the infringer . . . ."

The court, therefore, has within its discretion the power to award anywhere between no cents, or nominal damages, and one dollar for each infringing copy *made* or *sold*.

Since this court has decided, in the exercise of its discretion, to revert to the "in lieu" clause as provided in Section 101, the question now arises, what is the reasonable monetary relief to be awarded for each infringing copy sold?

In the Fifth Circuit, the Court of Appeals, writing per curiam in Mason v. Wainwright, 417 F.2d 769 (1969), directs the trial judge (at 769) to follow the Supreme Court's enunciation in L. A. Westermann Co. v. Dispatch Printing Co., 249 U.S. 100, 106, 39 S.Ct. 194, 196, 63 L.Ed. 499 (1919), as to the proper measure of damages:

"The court's conception of what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like, is made the measure of the damages to be paid, but with the express qualification that in every case the assessment must be within the prescribed limitations, that is to say, neither more than the maximum nor

less than the minimum. Within these limitations the court's discretion and sense of justice are controlling . ."

See also F. W. Woolworth Co. v. Contemporary Arts, Inc., supra.

This court finds that no substantial harm was sustained by plaintiff. As already pointed out, plaintiff's book, "Dark Companion," has not been a financial success nor has the book received wide acclaim. In like manner, the infringing work, "To the Top of the World," has also been a financial failure. It appears from the circumstances that plaintiff has sustained nominal damages from the infringing work.

█ Therefore, this court concludes that a $.10 award for each copy sold or distributed is just under the circumstances.

### LIBEL

There appears on the jacket of the hardcover Rand edition and on the paperback Bantam edition the following statement, which, by reason of a default judgment, has been found to be libelous:

"Much has been written about Arctic explorers and exploration, but there is no other book that tells of the relationship between these two amazing men."

█ Words which are defamatory on their face are libelous per se; words which are prima facie innocent, but defamatory in light of the circumstances of their publication, are libelous per quod. In order to state a cause of action in libel per quod, it is necessary to allege the extrinsic circumstances imparting a defamatory meaning to the language. 13 Vanderbilt Law Review 730, 1960. In libel actions the trial court must first determine whether a publication is libelous per se and, if not, the court must determine as a matter of law whether the writing is susceptible of a defamatory meaning derivable from extrinsic facts and circumstances which must be specifically pleaded and which must be supported by proof of special damages, that is, libelous per quod. M. F. Patterson

Dental Supply Company v. Wadley, 401 F.2d 167 (10th Cir. 1968), 10 Oklahoma Law Review 474.

██ In the case at bar, the default judgment on liability is determinative that the statement appearing on the cover of defendants' infringing books is libelous. However, the right, as a matter of law, to damages for libel, does not imply a right to substantial damages, and substantial damages must be founded upon a finding of substantial injury. However, where words are libelous upon their face, general damages are inferred by law and need not be proved by evidence. Walrus Manufacturing Co. v. Excel Metal Cabinet Co., 161 F.Supp. 840 (W.D.N.Y.1957); Frechette v. Special Magazines, 285 App.Div. 174, 136 N.Y.S.2d 448 (Third Dept. 1954); New York Woman v. New York Evening Journal, 172 Misc. 303, 14 N.Y.S.2d 916; Rosner v. Globe Value Corp., 193 Misc. 351, 83 N.Y.S.2d 496, affirmed 275 App. Div. 703, 87 N.Y.S.2d 524 (First Dept. 1949); Stevenson v. Hearst Consol. Publications, 214 F.2d 902 (2d Cir. 1954).

█ I am bound by the default judgment; therefore, I hold that the inscription here concerned was libelous. Thus, as a matter of law, plaintiff has a right to general damages. However, I do not feel that plaintiff has sustained substantial damage as a result of the libel. Therefore, plaintiff is entitled to a damage award due to libel in the amount of $100 from defendant Rand and in the amount of $200 from defendant Bantam.

### ATTORNEY'S FEES

█ Under Title 17 U.S.C. § 116 it is mandatory that the court allow "full costs" in a copyright infringement suit to the prevailing party. However, the court retains discretion as to whether to award "a reasonable attorney's fee as part of the costs." The award of attorney fees is a matter largely within the trial court's discretion. Orgel v. Clark Boardman Co., 301 F.2d 119 (2d Cir. 1962).

## 158

■ Here, defendants Rand and Bantam, by a default judgment, admitted violation of the Copyright Law. However, plaintiff, Bradley Robinson, has suffered nominal damages. The court will, in view of these facts, allow reasonable attorney's fees "as part of the costs" awarded to plaintiff (17 U.S.C. § 116).

Obviously, plaintiff cannot collect from Rand and Bantam for attorney's fees in relation to the action against Pauline K. Angell who answered and is litigating the case (see affidavit of services of Francis J. Sullivan, items f, i, j, m, q, r, and u).

■ This is a simple case of infringement. Although some attention may be given to the time spent by an attorney, it is not determinative. There is no evidence in the affidavit of plaintiff's attorney of how much time of the 171 hours related to the Angell defense. The real test is not time spent but results accomplished. In this instance, after failure of Rand and Bantam to answer, there was no further necessity of proving anything except damages. As already set forth in the discussion herein, plaintiff's book was not a financial success, hence, proof of plaintiff's actual damages cannot be demonstrated except as to any profits earned by the defendants. In fact, the defendants established losses.

As to disbursements, plaintiff's counsel asks for $268.22. No supporting facts are given for what purpose these disbursements were made; whether in connection with the defaulting defendants or with defendant Angell.

■ Plaintiff, however, has been put to the expense of litigating his claim as to damages by way of an inquest and in instituting the action. Plaintiff, therefore, is entitled to reasonable counsel fee in the amount of $750 from defendant Rand and $750 from defendant Bantam.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and the issues.

2. Plaintiff, Bradley Robinson, is entitled to a damage award of $.10 per copy for each of the 13,000 copies of the infringing work sold or distributed by defendant Rand. Plaintiff is therefore entitled to a total award of $1,300 as against defendant Rand, together with interest thereon as provided by law.

3. Plaintiff, Bradley Robinson, is entitled to a damage award of $.10 per copy for each of the 38,000 copies of the infringing work sold or distributed by defendant Bantam. Plaintiff is therefore entitled to a total award of $3,800 as against defendant Bantam, together with interest thereon as provided by law.

4. Plaintiff, Bradley Robinson, is entitled to an injunction enjoining defendants Rand and Bantam, their agents and servants, permanently from infringing said copyright in any manner and from publishing, marketing, selling or otherwise disposing of any copies of the book entitled, "To the Top of the World," or of any publication containing a condensation of said work.

5. Plaintiff, Bradley Robinson, is entitled to a damage award due to libel in the amount of $100 from defendant Rand and in the amount of $200 from defendant Bantam.

6. Plaintiff, Bradley Robinson, is entitled to the costs of this action from each defendant, Rand and Bantam.

7. Plaintiff, Bradley Robinson, is entitled to a reasonable counsel fee in the amount of $750 from defendant Rand and in the amount of $750 from defendant Bantam.

Settle judgment on notice pursuant hereto.