GERALDINE FRECHETTE, Respondent, v. SPECIAL MAGAZINES, INC., Appellant.

Third Department, December 28, 1954.

*Sidney Schreiberg* for appellant.

*Robert J. Feinberg* and *Harold A. Jerry* for respondent.

Zeller, J. *True Cases of Women in Crime* is a magazine published by the defendant and circulated in the United States and Canada. A news photograph of the plaintiff, Mrs. Geraldine Frechette of Plattsburgh, New York, sitting at the side of her sister, Mrs. Irene Burowsky of Chicago, Illinois, appeared in the January, 1954, issue of the magazine and, as the only printed matter in connection with it, had the following caption: "Another case of infanticide. Faced with a murder charge in the senseless killing of her 3-year-old son, Peter, Mrs. Geraldine Frechette, of Plattsburgh, New York, breaks down after describing to police how she beat him, then tied him to a hot water pipe in a dark closet—'To discipline him,' she said."

The caption would have been true if Mrs. Burowsky's name had been used in place of the name of the plaintiff. It was Mrs. Burowsky who was arrested in Chicago and charged with the death of her son. When the picture was taken, Mrs. Frechette was with her sister to extend comfort to her after her arrest. The caption as printed was libelous per se and the plaintiff brought an action to recover damages. The answer admitted the publication and that it was untrue and set up facts in mitigation of damages. Upon the trial, the magazine was introduced in evidence and the plaintiff, after testifying in her own behalf, rested. The defendant offered no proof. After summation of counsel and charge by the Trial Judge, the jury deliberated and returned a verdict in favor of the plaintiff for $15,000 indicating that $5,600 was allocated for compensatory damages and $9,400 for punitive damages.

Although malice sufficient to support an award of compensatory damages is presumed where the publication is libelous per se, proof of actual malice or its equivalent is necessary to support an award of punitive damages (*Carpenter* v. *New York Evening Journal Pub. Co.*, 111 App. Div. 266). Actual malice may be proven by showing acts or utterances or other publications of the defendant which display hatred, spite or ill will toward the plaintiff and, in some cases, it may be implied from the falsity of the publication itself (*Corrigan* v. *Bobbs-Merrill Co.*, 228 N. Y. 58, 66). The equivalent of actual malice may consist of publishing a libel with such negligence and carelessness as to indicate a wanton or reckless disregard of the rights of others (*Holmes* v. *Jones,* 121 N. Y. 461; *Amory* v. *Vreeland,* 125 App. Div. 850). Upon the trial of this action, the plaintiff did not attempt to prove actual malice nor did she seek to have it inferred. She sought punitive damages solely on the ground that the news photograph and caption were published with gross

carelessness. Upon this, as in a case where punitive damages are sought on the ground of actual malice, the plaintiff has the burden of proof (*Cohalan* v. *New York Press Co.*, 212 N. Y. 344; *Devoy* v. *Irish World & Amer. Ind. Liberator Co.*, 208 App. Div. 319).

On the subject of punitive damages, the Trial Judge instructed the jury, in part, as follows: " before you can find a verdict of exemplary damages, this plaintiff must establish to you by a fair preponderance of the evidence that the defendant, in its publication, was wanton and reckless and guilty of gross negligence and carelessness which in a sense amounts to a spirit of mischief or which might be inferred as malicious, but we are not confronted here with malice. Counsel for the plaintiff and the defendant have stated to you that that element is not here, but, as to the punitive damages, you do have that matter as to what duty was the defendant here called upon to inquire about before publishing this article.'' In general, this was a correct statement of the law applicable to the theory upon which the plaintiff was seeking an award in excess of compensation. But the defendant argues that the plaintiff did not meet the burden of proving that the defendant was " wanton and reckless and guilty of gross negligence and carelessness ''.

No testimony was given to show where or how or by whom the name of the plaintiff was substituted for that of her sister. The plaintiff asserts that the defendant's answer contains evidence of its gross and wanton negligence and points particularly to those paragraphs — parts of which were addressed to the plaintiff's cause of action for invasion of privacy which was withdrawn at the commencement of the trial — which allege that the occurrence was a subject of great public interest and was featured in various newspapers and described on the wire news services. However, we do not construe the answer or any part of it as furnishing the basis of an inference that the defendant was grossly careless in the publication. Neither do we believe that an inference of the defendant's gross carelessness may be drawn from the fact that a mistake was made by someone.

*Rushlow* v. *Plattsburgh Republican Pub. Co.* (262 App. Div. 931), relied upon by the plaintiff, is not controlling. In the *Rushlow* case there was *evidence* concerning the indirect manner in which the libelous article came into possession of the defendant newspaper and *testimony* that, although the editor and manager were acquainted with the plaintiff who resided only twenty-five miles from the defendant's place of business, they

made no investigation concerning the truth of the article, and there was *other proof* from all of which the jury was justified in finding that the publication was reckless and in wanton disregard of the rights of the plaintiff to whom punitive damages were awarded. The sentence in the opinion that " It was the duty of the defendant to investigate before so serious a charge was given publicity " must be read in light of the facts of that case. " In applying cases which have been decided, what may have been said in an opinion should be confined to and limited by the facts of the case under consideration when the expressions relied upon were made, and should not be extended to cases where the facts are essentially different " (*Crane* v. *Bennett,* 177 N. Y. 106, 112). In the case before us there is no evidence showing how the photograph and its erroneous caption came to be published and no evidence whether the defendant made or failed to make any investigation before publishing the matter.

We conclude that there is no basis in the record for sustaining a finding that the defendant was wanton and reckless and guilty of gross negligence and carelessness in publishing the libel. Moreover, it is doubtful that the jury actually arrived at such a conclusion as the basis of its award of punitive damages. Apparently uncertain of the legal basis of an award for punitive damages, the jury returned to the courtroom after some deliberations and requested further instructions. The Trial Judge complied by stating " the burden is on the plaintiff to establish by a fair preponderance of the evidence that the publication by the defendant was careless, reckless, wanton, mischievous, and wilful ". Counsel for the plaintiff objected to the word " wilful " and the Trial Judge said it should be stricken out. Counsel then suggested that the Trial Judge use the words " careless and negligent " to which he obliged by saying " Careless, negligent, and I think I said mischievous as I recall it." A further question concerning punitive damages was addressed by the forelady to the Trial Judge in which she said " Now, it would be, ' negligent,' and what are the other words that went with that? " to which the Trial Judge replied, " Well, ' wanton, reckless, mischievous ' ". All this did not serve to clarify the issue for the jury but left an impression that a finding of an absence of ordinary care — rather than a finding of such negligence and carelessness as to indicate a wanton or reckless disregard of the rights of others — would support an award of punitive damages. This impression was still with the jury when the forelady announced that " the jury brings back a verdict  *  *  *  due to *negligence* in the amount of $9,400." (Italics supplied.)

The defendant contends that the award of compensatory damages was excessive and obviously a compromise. Damages are presumed to flow from a libel (*Abell* v. *Cornwall Ind. Corp.*, 241 N. Y. 327, 335) and a plaintiff need not offer proof of any damage but is entitled to recover for the injury to his reputation and for his injured feelings. (*Bishop* v. *New York Times Co.*, 233 N. Y. 446.) In view of the serious nature of the charge contained in the publication and the proof concerning the plaintiff's feelings upon learning of it, we do not consider the award of compensatory damages to be excessive. Neither are we able to conclude that the amount awarded was determined by some manner not to be countenanced. '' In a libel case, more, perhaps, than in any other, the jury is generally considered to be the supreme arbiter on the question of damages. In actions for other torts there is generally to be found some standard by which the reasonableness of an award of damages may be tested, but it is seldom so in actions for libel and slander where the elements of wounded sensibilities and the loss of public esteem play a part '' (*Lynch* v. *New York Times Co.*, 171 App. Div. 399, 401).

As the other errors alleged by the defendant either are without merit or unsubstantial or pertain to the punitive damage element of the case, it will be unnecessary — with one exception — to comment upon them. After the jury returned to the courtroom and received further instructions, counsel for both parties requested certain charges. Counsel for the plaintiff requested the Trial Judge to charge the rule enunciated in the *Rushlow* case. After some discussion, the Trial Judge adopted the language suggested by counsel and then directed counsel to restate it *to the jury*. This counsel did at length. Such a practice we do not approve. It is not the function of counsel to instruct the jury upon the law.

The award of compensatory damages is based upon sufficient evidence and free from reversible errors of law but the opposite is true of the award of punitive damages. As the jury separately stated the awards, we are not required to decree an unconditional reversal but we may grant the plaintiff the option of saving the one award by renouncing the other or having both awards vacated and a new trial granted. The judgment should be reversed on the law and the facts, with costs to the defendant, and the verdict set aside and a new trial directed unless the plaintiff within ten days from notice of the entry of the order on the decision herein stipulates to reduce the amount of the verdict to $5,600 in which event the judgment as modified by the stipulation should be affirmed, without costs.

Foster, P. J., Bergan, Halpern and Imrie, JJ., concur.

Judgment reversed on the law and the facts, with costs to the defendant and the verdict set aside and a new trial directed unless the plaintiff within ten days from notice of the entry of the order on this decision stipulates to reduce the verdict to $5,600 in which event the judgment, as modified in accordance with the stipulation, is affirmed, without costs.