Jacob Markowitz, J.
This is a motion to dismiss the complaint in a libel action. Plaintiff, a former heavyweight boxing champion, sues defendant on two counts. The first is based on a cover headline in defendant’s publication, ‘1 Sports Illustrated ”, which reads “ Dempsey’s Gloves Were Loaded ”. The second is on the published story itself, printed inside the magazine, entitled “He Didn’t Know the Gloves Were Loaded”. The story was presumably narrated by one Jack (Doc) Kearns, now deceased, who was plaintiff’s manager in 1919. The purport of the story suggests that plaintiff won his championship title from Jess Willard by use of “ loaded gloves ”. According to the published report, Kearns put plaster of Paris in a talcum container and, after bandaging plaintiff’s hands, drenched them with water to keep them “ cool ” and sprinkled them generously with the substance in the talcum can.
In urging dismissal of the complaint, defendant relies on the defense of qualified privilege and on the contention that, as a matter of law, the publication is incapable of a meaning defamatory to plaintiff.
The defense of qualified or conditional privilege is generally available where the alleged defamatory matter was written on either an occasion or by reason of some relationship which makes it proper for a defendant to communicate the matter to others (Seelman, Law of Libel, p. 238). The policy behind this type of defense is stated by the American Law Institute as follows: “ Occasions conditionally privileged afford a protection based upon a public policy which recognizes that it is essential that true information shall be given whenever it is reasonably necessary for the protection of one’s own interests, the interests of third persons, or certain interests of the public. In order that such information may be freely given, it is necessary to afford protection against liability for misinformation given in an honest and reasonable effort to protect or advance the interest in question. Were such protection not given, true information which should be given or received would not be communicated through fear of the persons capable of giving it that they would be held liable in an action of defamation unless they could meet the heavy burden of satisfying a jury that their statements were true. These privileges have a strong analogy to the privileges *756 intentionally to invade the legally protected interests in bodily security, freedom from confinement and the exclusive possession of land or chattels. Like these privileges, they give protection from liability only when exercised for the purpose for which they are given and with reasonable care that no more harm shall be done to the interests of others than is necessary to accomplish the end for which the privilege is given.” (2 Restatement of Torts, Scope Note on Occasions Conditionally Privileged, pp. 240-241.)
Defendant, in effect, argues herein that it must be relieved of the burdensome, if not impossible, task of proving the truth of the published statements because of plaintiff’s status as a public figure and the public’s legitimate interest in knowing of, and being able to evaluate, “ an important statement of fact made about the public affairs of such a public hero by a person who had formerly been closely connected with him.” The purport of this argument is that even if the alleged libel is false, its privileged status insulates the defendant against a presumption of malice and places upon plaintiff the burden of alleging and proving actual malice.
The net effect of this argument, if accepted, would, of course, be to extend to all public figures the holding with respect to public officials in New York Times Co. v. Sullivan (376 U. S. 254). The holding of that case is (p. 283) a recognition of a constitutional limitation on 11 a State’s power to award damages for libel in actions brought by public officials against critics of their official conduct.”
In Spahn v. Julian Messner, Inc. (43 Misc 2d 219, 224), this court stated that, in its opinion, the New York Times case {supra) was limited to its specific facts, to wit, criticism of the official conduct of public officials, and did not adopt an ‘ ‘ absolutist view of the rights safeguarded by the First Amendment ’ ’.
The attention of the court has been directed to the case of Pauling v. News Syndicate Co. (335 F. 2d 659 [U. S. C. A., 2d Circ., decided July 7, 1964]). There, after holding that the case was properly submitted to the jury “ under pre-New York Times law ’ ’, the court in a dictum observation stated: ‘ ‘ Although the public official is the strongest case for the constitutional compulsion of such a privilege, it is questionable whether in principle the [New York Times] decision can be so limited.” However, in suggesting the possibility of “ still further erosion of the protection heretofore given by the law of defamation ”, the learned court confined itself to current issues of grave public concern. It is the opinion of this court that *757 the reaching back 45 years, as was done in the instant case, is not within the purview of even the suggested extension of the New York Times case, so as to cloak the described event with a veil of privilege. This court is not prepared to hold that because of the mere fact that one is a public individual, he may be exposed to naked libel, unless the classical factors which serve to abate or mitigate the otherwise tortious act are also present.
A corollary contention made by defendant is that when a news medium makes a fair presentation of two contradictory statements on a “matter of public interest”, it is entitled to constitutional protection. The so-called “fair” presentation referred to consists of a boxed insert in which Dempsey calls the story “ Ridiculous! ”, while Willard says its “ True.” While this may be introduced as a mitigating matter, the suggestion that a libel be excused because a denial made by the subject thereof is also published, is patently absurd. Moreover, insofar as the cover is concerned, there is no presentation of two contradictory statements. It states affirmatively “Dempsey’s Grloves Were Loaded ”.
On the question of malice, defendant asserts that this has been insufficiently pleaded in the complaint. This, however, is putting the cart before the horse. Malice is presumed unless a qualified privilege is established, in which case actual malice must ultimately be proved. Not only has defendant not shown that this is a proper case where the doctrine of qualified privilege may be invoked, but even if it were, a reckless disregard for the truth may be shown to overcome privilege even under the New York Times doctrine (supra; see, also, Pecue v. West, 233 N. Y. 316). In the instant case, defendant admits that it knew that Kearns was a self-admitted rogue and rascal. Any inferences that may be made from its use of the material may only be established at a trial.
The court rejects also defendant’s contention that the particular publications herein are not, as a matter of law, capable of a meaning defamatory to plaintiff. This argument is presumably based on the indication in the main story itself that Dempsey was not aware of the loading of the gloves, and on the further argument that no one would believe a character as disreputable as Kearns. Insofar as the suggestion as to Dempsey’s innocence is concerned, it is totally immaterial. As the story was presented, it is capable of an inference that he acquired his title under fraudulent circumstances. This is sufficient for submission to a jury. Insofar as Kearns’ reputation is concerned, it comes with ill grace for defendant, which *758 knew of Kearns’ reputation, to attempt to hide behind it as a defense to its act.
For the foregoing reasons, the motion to dismiss the complaint is denied.