**Emanuel WACHS, Plaintiff,**

v.

**Bruno WINTER, Defendant.**

**No. 81 C 2640.**

United States District Court,
E.D. New York.

Aug. 18, 1983.

Report and Recommendation of United States Magistrate Jan. 19, 1983.

Report and Recommendation of United States Magistrate June 23, 1983.

Gerald M. Kleinbaum, New York City, for plaintiff.

## ORDER

NICKERSON, District Judge.

The attached reports of Magistrate A. Simon Chrein dated January 19, 1983 and June 22, 1983 are adopted in all respects. The Clerk shall enter judgment for plaintiff in the amount of $26,550. So ordered.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE

A. SIMON CHREIN, United States Magistrate.

The Honorable Eugene H. Nickerson has referred this matter to the United States Magistrate for a report and recommendation on the issue of damages.

Plaintiff Emanuel Wachs was born in Hungary in 1906. He is now a citizen of Israel where he is a practicing attorney. Defendant, Bruno Winter, was last known to reside in Flushing, New York during which time (1970–1973) he had retained plaintiff to represent him regarding the inheritance of real property located in Israel.

Plaintiff filed suit against defendant on August 12, 1981 for libel growing out of said representation. Defendant accused plaintiff of improper and unprofessional conduct in four letters and one cable to Israeli government officials and members of the Israeli judiciary which were dated August 21, 1972, August 27, 1972, October 14, 1972, March 12, 1973 and March 20, 1973. In those letters defendant accused plaintiff of collaborating with the adverse party, manipulating false documents to the detriment of defendant's cause and imposing his services as an attorney upon defendant. By his actions plaintiff alleges that the defendant has impugned plaintiff's professional integrity, honesty, loyalty and competency. Plaintiff further alleges that defendant did so maliciously and recklessly with utter disregard for the truth and for the purpose of injuring plaintiff's good name.

By letter of December 22, 1972 the Israeli Bar advised defendant that it had investigated his charges against plaintiff and had concluded that defendant's complaints were groundless. Nevertheless, defendant sent two more letters in March, 1973 to the Israeli Ministry of Justice and the President of the Supreme Court in Jerusalem. Subsequently, on May 2, 1973 the Israeli Ministry of Justice informed defendant that no evidence had been found in support of his allegation that plaintiff participated in the manipulation of forged documents.

As a result of defendant's actions plaintiff alleges he has suffered great pain and mental anguish and has been irreparably injured not only in his profession and professional standing before the Israeli Bar but also before the Israeli judicial and executive branches in the city of Haifa, Israel and elsewhere.

Plaintiff seeks $150,000 in compensatory damages for each of the four letters written and published by the defendant, as well as $150,000 in exemplary or punitive damages and the costs and expenses of this action.

Whereas defendant failed to either plead or otherwise defend in this action as required by Fed.R.Civ.P. 55(a), an entry of default was noted by the Clerk of this Court on December 15, 1981.

Since defendant has defaulted in this matter, it is not necessary to discuss the merits of plaintiff's claims. Any affirmative defenses such as statute of limitations or privilege with regard to the libel must be deemed waived and may not be considered. Fed.R.Civ.P. 8(c); *Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152 (2d Cir.1968). The allegations contained in plaintiff's complaint must be deemed true. Fed.R.Civ.P. 8(d). The only issue to be resolved is the calculation of damages to which plaintiff is entitled.

On May 6, 1982 the undersigned conducted a hearing to ascertain the injuries sustained by plaintiff. Although neither party raised the issue, since plaintiff is an Israeli citizen who was injured by libelous statements made and published by defendant in Israel, the question arises as to which law of damages applies: that of Israel or that of New York, the forum state. A strong argument could be made for the application of Israeli law since plaintiff is domiciled in Israel, the libelous statements were published there and plaintiff's injuries were sustained in Israel. *See Machleder v. Diaz*, 538 F.Supp. 1364, 1369–70 (S.D.N.Y.1982); Restatement (Second) of Conflict of Laws § 149, comment d (1971). The only connection with New York is that it is defendant's last known residence.[1]

■■■ This court has jurisdiction of the within matter on the basis of diversity of citizenship of the parties. A federal court sitting in diversity must apply the substantive law of the forum state. *Klaxon Company v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Rosenthal v. Warren*, 475 F.2d 438 (2d Cir.), *cert. denied*, 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973). Since New York is the forum, its conflict of laws rule would be applied. *See Machleder v. Diaz,*

538 F.Supp. at 1369. Under New York's choice of law rule one looks to "the law of the jurisdiction which has the strongest interest in the resolution of the particular issue presented." *Babcock v. Johnson,* 12 N.Y.2d 473, 484, 191 N.E.2d 279, 288, 240 N.Y.S.2d 743, 752 (1963). *See also Rosenthal v. Warren,* 475 F.2d at 442; *Lawlor v. Gallagher President's Report, Inc.,* 394 F.Supp. 721, 726 (S.D.N.Y.1975), *remanded,* 538 F.2d 311 (2d Cir.1976); *Nader v. General Motors Corporation,* 25 N.Y.2d 560, 255 N.E.2d 765, 307 N.Y.S.2d 647 (1970); *Tooker v. Lopez,* 24 N.Y.2d 569, 249 N.E.2d 394, 301 N.Y.S.2d 519 (1969). Where the parties are from different states, this is usually the law of the place of injury (i.e., *lex loci delictus*), unless it can be shown that displacing this rule would advance the substantive law purposes of the states involved. *Neumeier v. Kuehner,* 31 N.Y.2d 121, 286 N.E.2d 454, 335 N.Y.S.2d 64 (1972).

It would appear from the facts of this case that Israeli law would apply since all relevant actions and injuries took place there. *See Vishipco Line v. Chase Manhattan Bank, N.A.,* 660 F.2d 854, 860 (2d Cir. 1981), *petition for cert. filed,* 50 U.S.L.W. 3717 (U.S. Feb. 26, 1982) (No. 81–1591). Further, Israel would have a very strong interest in protecting its citizens from libel. *See Tooker v. Lopez,* 24 N.Y.2d at 576, 249 N.E.2d at 398, 301 N.Y.S.2d at 525. However, we need not reach the issue of choice of law since both parties have failed to raise it. *Luckett v. Bethlehem Steel Corporation,* 618 F.2d 1373, 1378 n. 3 (10th Cir. 1980).

■■■ A federal court sitting in diversity is not required to take judicial notice of the laws of foreign countries. *See* Fed.R.Civ.P. 44.1.[2] If the parties fail to raise the issue of choice of law, the court is not obligated

---

1. There is no evidence that plaintiff chose New York as a forum to avoid application of Israeli law. Rather, New York appears to be the only forum where defendant could possibly be found.

2. Rule 44.1 provides:

 A party who intends to raise an issue concerning the law of a foreign country *shall*

*give notice* in his pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law. (Emphasis added).

to do so on its own. *Vishipco Line v. Chase Manhattan Bank, N.A.,* 660 F.2d at 860; *Commercial Insurance Company of Newark, New Jersey v. Pacific-Peru Construction Corp.,* 558 F.2d 948, 952 (9th Cir.1977); *Bartsch v. Metro-Goldwyn-Mayer, Inc.,* 391 F.2d 150, 155 n. 3 (2d Cir.), *cert. denied,* 393 U.S. 826, 89 S.Ct. 86, 21 L.Ed.2d 96 (1968). There is no evidence that either side has argued for application of foreign law. *See Luckett v. Bethlehem Steel Corporation,* 618 F.2d at 1378 n. 3. The failure of the parties to alert the court in pleadings or otherwise constitutes a waiver of this issue. *See Morse Electro Products Corp. v. S.S. Great Peace,* 437 F.Supp. 474, 487–88 (D.N.J.1977). When both parties have been silent on the issue of which law to apply, it can be said that they have acquiesced in the application of the forum law. *See Clarkson Company Limited v. Shaheen,* 660 F.2d 506, 512 n. 4 (2d Cir.1981), *cert. denied,* 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 850 (1982). This view agrees with that of the Restatement (Second) of Conflict of Laws which calls for the application of forum law (i.e., New York law) where no or little information regarding the foreign law has been supplied. *Id.* at § 136, comment h at 378; *accord, In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979,* 644 F.2d 594, 631 (7th Cir.), *cert. denied,* 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981).

■ Under New York law a written statement is libelous per se, i.e., actionable without allegation or proof of special damages:

" 'if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community, even though it may impute no moral turpitude to him' ... [or] *tends to disparage a person in the way of his office, profession or trade."* *Nichols v. Item Publishers, Inc.,* 309 N.Y. 596, 600–01, 132 N.E.2d 860, 861–862 (1956); quoting *Mencher v. Chesley,* 297 N.Y. 94, 100, 75 N.E.2d 257, 259 (1947). (Emphasis added).

*See also Rudin v. Dow Jones & Company,* 510 F.Supp. 210, 212 (S.D.N.Y.1981); *Handelman v. Hustler Magazine, Inc.,* 469 F.Supp. 1048, 1050 (S.D.N.Y.1978).

■ Letters published concerning an attorney which, on their face, are susceptible in their ordinary meaning of a construction that would tend to injure him in that capacity, are libelous per se. *Kleeberg v. Sipser,* 265 N.Y. 87, 91, 191 N.E. 845, 846 (1934). Examples of such statements include those which show a lack of character or a total disregard of professional ethics, e.g., statements that indicate an attorney has been disloyal to the best interest of his client, *see November v. Time, Inc.,* 13 N.Y.2d 175, 194 N.E.2d 126, 244 N.Y.S.2d 309 (1963); *Levy v. Gelber,* 175 Misc. 746, 747, 25 N.Y.S.2d 148, 149 (Sup.Ct. Bronx County 1941), or statements that accuse an attorney of unprofessional conduct. *Kleeberg v. Sipser,* 265 N.Y. at 93, 191 N.E. at 846–47; *see also Handelman v. Hustler Magazine, Inc.,* 469 F.Supp. at 1051–52.

■ After a review of the documents in question, the undersigned concludes that the letters written by defendant concerning plaintiff's representation of him in Israel constitute libel per se because defendant has accused plaintiff of the following:

(1) forcefully representing defendant against his will (see letters of August 21 and 27, 1972 and March 12, 1973); and

(2) procuring false documents to defendant's detriment (see letters of August 21 and 27, 1972 and March 12, 1973); and

(3) cooperating with the adverse party, contrary to defendant's interest (see letter of March 20, 1973).

Such statements taken at face value and in their ordinary meaning would tend to injure plaintiff in his capacity as a lawyer and, therefore, are libelous per se. *Kleeberg v. Sipser,* 265 N.Y. at 91, 191 N.E. at 846.

■ The standard recovery in a libel action is actual or compensatory damages, i.e., damages that are commensurate with the harm suffered. *Crane v. New York World Telegram Corp.,* 308 N.Y. 470, 126 N.E.2d 753 (1955). The United States Supreme Court has limited recoveries by pri-

vate defamation plaintiffs to compensation for actual injuries unless plaintiff can prove defendant acted with knowledge that his statements were false or with a reckless disregard for the truth. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 349, 94 S.Ct. 2997, 3011, 41 L.Ed.2d 789 (1974); *Handelman v. Hustler Magazine, Inc.,* 469 F.Supp. 1053, 1059 n. 11 (S.D.N.Y.1979). If plaintiff can prove the latter, he is also entitled to recover punitive damages. *Id.* Punitive damages under those circumstances are awarded at the discretion of the trier of fact. *Reynolds v. Pegler,* 123 F.Supp. 36, 39 (S.D. N.Y.1954), *aff'd,* 223 F.2d 429 (2d Cir.), *cert. denied,* 350 U.S. 846, 76 S.Ct. 80, 100 L.Ed. 754 (1955); *Meehan v. Snow,* 494 F.Supp. 690, 696 (S.D.N.Y.1980), *rev'd on other grounds,* 652 F.2d 274 (2d Cir.1981). The purpose in awarding punitive damages is not only to deter the libelor so that he will not repeat his actions, *see Reynolds v. Pegler,* 123 F.Supp. at 38; *Corrigan v. Bobbs-Merrill Company,* 228 N.Y. 58, 126 N.E. 260 (1920), but also to serve as a warning to others. *Faulk v. Aware, Inc.,* 19 A.D.2d 464, 244 N.Y.S.2d 259 (1st Dept.1964), *aff'd,* 14 N.Y.2d 899, 252 N.Y.S.2d 95, 200 N.E.2d 778 (1964). However, actual damages (even if only minimal) must be found as a predicate for an award of punitive damages. 35 N.Y.Jur.2d *Libel and Slander* § 170 (1964). Punitive damages may be considered expressive of the community attitude toward one who wilfully and wantonly causes hurt or injury to another. *Reynolds v. Pegler,* 123 F.Supp. at 38; *Toomey v. Farley,* 2 N.Y.2d 71, 83, 138 N.E.2d 221, 228, 156 N.Y.S.2d 840, 849 (1956).

In New York punitive damages are recoverable only if the publication is shown to have been made with "actual malice," i.e., "a libel, recklessly or carelessly published as well as one induced by personal ill will." *Crane v. New York World Telegram Corp.,* 308 N.Y. at 476, 126 N.E.2d at 757. *See also Frechette v. Special Magazines, Inc.,* 285 A.D. 174, 175, 136 N.Y.S.2d 448, 450–51 (3rd Dept.1954). Actual malice implies the desire to injure or indicates that the party was activated by spite or ill will. *Id; see also Corrigan v. Bobbs-Merrill Co.,* 228 N.Y. at 62–63, 126 N.E. at 262; 34 N.Y.Jur.2d *Libel and Slander* § 75 (1964). Actual malice may also be inferred as against the author of a libelous publication from the falsity of the publication. *Corrigan v. Bobbs-Merrill Co.,* 228 N.Y. at 66, 126 N.E. at 263; *Frechette v. Special Magazines, Inc.,* 285 A.D. at 175, 136 N.Y.S.2d at 451. Additionally, malice may be shown from such wanton and reckless disregard of plaintiff's rights as will be regarded as the equivalent of actual malice. *Reynolds v. Pegler,* 123 F.Supp. at 38, 223 F.2d at 434; *Frechette v. Special Magazines, Inc.,* 285 A.D. at 175, 136 N.Y.S.2d at 451; *see also Dempsey v. Time, Inc.,* 43 Misc.2d 754, 757, 252 N.Y.S.2d 186, 189 (Sup.Ct. New York County 1964), *aff'd,* 22 A.D.2d 854, 254 N.Y. S.2d 80 (1964).[3]

Since defendant has never appeared in this action, it is difficult to make a determination as to whether or not he acted in good faith or with malice. *Cf. Perfect Fit Industries v. Acme Quilting Co.,* 494 F.Supp. 505, 507 (S.D.N.Y.1980), *modified on other grounds,* 646 F.2d 800 (2d Cir.1981) (actual

---

**3.** In his July 16, 1982 memorandum at page 2 plaintiff suggests that "(t)he serious nature of defendant's accusations, and defendant's republication of these accusations even after being notified by the Haifa Bar Committee and Dr. Goldsmith that the accusations were groundless, mandates the conclusion that the libelous documents were published with actual malice." However, this is not the correct standard. The serious nature of an accusation does not necessarily mandate a conclusion that it was made with malice.

As further evidence of defendant's malice, plaintiff has submitted letters dated December 19, 1971 and June 21, 1972 (See Plaintiff's Affi-

davit, Exhibits A & B) from a Dr. H. Goldsmith, a Haifa lawyer and acquaintance of defendant, in which Dr. Goldsmith advised the defendant that his charges were groundless. These letters preceded those which are the subject of this action. Apparently, plaintiff has submitted them not only as evidence of the falsity of defendant's charges but also as evidence that defendant republished his charges against plaintiff in subsequent letters.

Since Dr. Goldsmith was an acquaintance of the defendant to whom he turned for advice, the undersigned is of the opinion that the letters deserve little weight in evaluating whether or not the defendant acted with malice.

malice could be inferred by jury from testimony of witness who stated he redrafted defamatory letter fifteen times).

Upon reading the letters written by the defendant, it is clear to the undersigned that, although the remarks are damaging to the plaintiff, one senses that the defendant believed he was wronged, however erroneous that belief might have been. Further, it appears that defendant was motivated more by a desire to secure the property in question rather than by a feeling of ill will or spite toward plaintiff.

Since there is very little objective evidence that defendant acted either in bad faith or with malice toward plaintiff, the undersigned recommends that plaintiff not be awarded punitive damages. *Cf. Reynolds v. Pegler,* 123 F.Supp. at 41 (defendant's persistent and continuing attitude over a four year period reflected malice of a high degree and was calculated to injure the plaintiff in his profession and in his standing in the community).

Although defendant did publish four letters that were damaging to the plaintiff, all of the letters were concerned with defendant's dissatisfaction with plaintiff's representation of him in Israel. These letters were addressed not to newspapers but, rather, to those officials defendant believed had the authority to investigate his charges. *Cf. Reynolds v. Pegler,* 123 F.Supp. at 40 (defendant newspaper published twenty-six paragraph article defamatory on its face).

Furthermore, although plaintiff testified that the complaints lodged against him were the topic of conversations among his colleagues (77–78)[4], there was a limited publication of defendant's charges. The letters in question were sent to officials whose files would presumably not be open to the general public, e.g., the President of the District Court in Haifa, the Israeli Minister of Justice, the Deputy Senior Attorney of the Ministry of Justice and the President of the Supreme Court in Jerusalem.

Attorneys provide services for their clients and part of the risk of being a lawyer is having a client who is dissatisfied. *See Meehan v. Snow,* 494 F.Supp. at 698. Such dissatisfaction is not necessarily kept secret. Rather than acting with a wanton disregard for plaintiff's reputation, it appears that defendant was unhappy with plaintiff because of the possibility that he might lose his claim to the land in Israel. All clients expect their attorneys to win their cases; defendant was no different.

An additional factor to be considered in evaluating whether or not the defendant acted with "actual malice," is the fact that defendant was living in the United States, thousands of miles from where the suit was being litigated. Defendant's only means of communicating with plaintiff was by letter; further, it was his only means of expressing his dissatisfaction with plaintiff to the Israeli Bar.

Punitive damages are meant to punish the libelor for his malice, *see Reynolds v. Pegler,* 123 F.Supp. at 38, and to deter similar occurrences in the future. *Id.; see also Zarcone v. Perry,* 572 F.2d 52, 55 (2d Cir.1978). The undersigned has already found that the defendant did not act with malice. Hence, there is no justification for sanctioning him by awarding plaintiff punitive damages. Furthermore, the acts complained of occurred more than nine years ago; there is no evidence that defendant has continued to libel plaintiff since that time.[5] The undersigned sees no need to deter the defendant at this point, since it is unlikely he will recommence his complaints against the plaintiff. Further, if this court were to award plaintiff punitive damages, such action would not necessarily deter others from making libelous statements since

---

**4.** Numbers in parenthesis refer to transcript of May 6, 1982 hearing.

**5.** Plaintiff has submitted an affidavit by Edwin M. Slote, Esq. which states that in 1974 Mr. Slote spoke to Jerome Teich, an attorney who had represented the defendant. At that time Mr. Teich referred to plaintiff as "the lawyer who sold my client [the defendant, Bruno Winter] down the river." However, plaintiff fails to indicate when Mr. Winter discussed the plaintiff with his attorney. There is no evidence the conversation was held after May 2, 1973, the date of the last letter sent to defendant from the Israeli Ministry of Justice advising defendant that his charges were groundless.

plaintiff was defamed in Israel and the effect of the judgment will, in fact, be realized there.

■ Although plaintiff is not entitled to receive punitive damages, the undersigned does recommend that plaintiff be awarded compensatory damages for his injuries. There are two general classes of compensatory damages for defamation: (1) general damages which the law presumes to be the natural, proximate and necessary result of the publication; and (2) special damages which, although the natural and probable consequences thereof, are not assumed to be necessary and inevitable; rather, special damages must be shown by allegation and proof. *Bishop v. New York Times Company,* 233 N.Y. 446, 135 N.E. 845 (1922). However, where the language alleged as libel is libelous per se,[6] the plaintiff need not plead or prove special damages in order to recover them. *Mencher v. Chesley,* 297 N.Y. at 100, 75 N.E.2d at 259.

■ Further, actual injury is not limited to out-of-pocket loss but, rather, also includes impairment of reputation and standing in the community, personal humiliation and mental anguish and suffering. *Gertz v. Robert Welch, Inc.,* 418 U.S. at 350, 94 S.Ct. at 3012; *see also Time, Inc. v. Firestone,* 424 U.S. 448, 460–61, 96 S.Ct. 958, 968–69, 47 L.Ed.2d 154 (1976). Where defamatory words are actionable per se, a plaintiff may also recover for physical illness and suffering, *see Garrison v. Sun Printing and Publishing Association,* 207 N.Y. 1, 6, 100 N.E. 430, 431 (1912), injury to business occupation or profession, 35 N.Y. Jur.2d *Libel and Slander* § 174 (1964), or prospective loss of income. *See Faulk v. Aware, Inc.,* 19 A.D.2d at 470, 244 N.Y.S.2d at 265. However, a person who is defamed has a duty to minimize the effects of the defamation. 35 N.Y.Jur.2d *Libel and Slander* § 175 (1964). One who attempts to mitigate such damages is entitled to recover reasonable expenses that are proportionate to the injury and to the consequences to be averted. *Den Norske Ameriekalinje Acties-*

*selskabet v. Sun Printing and Publishing Association,* 226 N.Y. 1, 8, 122 N.E. 463, 465 (1919); *see also East Hampton De Witt Corporation v. State Farm Mutual Automobile Insurance Company,* 490 F.2d 1234, 1239 (2d Cir.1973).

In support of his claim for compensatory damages plaintiff alleges the following injuries:

1. Substantial mental anguish, humiliation and suffering as a result of the defendant's accusations.

2. Physical pain and suffering which interfered with plaintiff's ability to work.

3. Injury to plaintiff's reputation which resulted in a decline in then current income as well as a loss of prospective income.

4. A substantial loss in billable time due to the fact plaintiff had to defend himself against defendant's charges.

5. Substantial out-of-pocket expenses disbursed by plaintiff in an attempt to clear his name.

■ It is evident from both plaintiff's testimony and his actions to clear his name that plaintiff suffered some mental distress as a result of defendant's charges against him. *Cf. Handelman v. Hustler Magazine, Inc.,* 469 F.Supp. at 1060 n. 14 (trial court found no competent evidence to support a finding of mental anguish and suffering). Plaintiff had to contend with defendant's groundless complaints from at least mid-1971[7] until May 2, 1973 when the Ministry of Justice advised defendant that there was no evidence to support his claims. There is sufficient evidence from both plaintiff (59–60, 67–68) and his associates (See Affidavits of Shuali, Wenig, Sirota, Neeman, Arotchas and Fleker) to substantiate plaintiff's claim that his mood and demeanor changed dramatically during this period and that defendant's charges interfered with his ability to work (59). *Cf. Meehan v. Snow,* 494 F.Supp. at 696 (plaintiff was unable to demonstrate that he was so upset by the defa-

---

6. See page 1443 *supra.*

7. See exhibit A to plaintiff's affidavit of June 17, 1982 indicating the existence of complaints

by defendant against plaintiff earlier in time than the letters which are the subject of this suit.

mation that his work was affected). Although plaintiff claims to have suffered a breakdown (71) after the President of the Supreme Court refused to see him, there is no objective medical evidence to substantiate that claim. Furthermore, it appears that the President's action was correct since defendant's charges against the plaintiff were *sub judice* at that time, and plaintiff as an attorney must have appreciated this at the time of this encounter. In recognition of plaintiff's mental pain and suffering, I recommend that he be awarded $7500 in compensatory damages.

In support of his claim for physical pain and suffering, plaintiff submitted a statement from Dr. Thomas Pillar, plaintiff's treating physician since 1967. Plaintiff was in general good health in May, 1973 when Dr. Pillar examined him, save for complaints of anxiety, nervousness, sleeplessness, fatigue and difficulty in concentration. Both plaintiff and Dr. Pillar characterize the former as a direct result of the defendant's libelous statements. The only objective evidence of a medical problem is a slight blockage of the heart which plaintiff admitted could not be attributed to defendant's actions (72). Rather, it is more likely a consequence of plaintiff's age (i.e., sixty-six at the time of Dr. Pillar's initial examination in 1973). Also, the fact that plaintiff can no longer engage in eighteen mile marches (71) could be attributed to plaintiff's age, rather than to the defendant's actions. Furthermore, plaintiff's age may also be the reason why he has not regained "his former stability" (Pillar's Statement at 2). Although plaintiff has offered very little objective evidence of any serious medical problem stemming from the defendant's action, in light of the above-mentioned physical complaints I recommend that plaintiff be awarded the sum of $2,500 for his physical pain and suffering during the period 1971–1973.

Although plaintiff's standing in the legal community was affected by the defendant's libelous statements, there is ade-quate evidence that plaintiff's reputation and integrity were so well-established that no one who knew Dr. Wachs believed these charges (See Affidavits of Roffe, Schuali, Wenig, Sirota, Neeman, Arotchas and Fleker). Dr. Wachs was understandably humiliated but it appears that Mr. Winter's charges were thought to be groundless by all who heard them (89). It also appears that many of the persons who learned of the defendant's allegations obtained this knowledge as a result of plaintiff's perfectly proper efforts to prosecute this lawsuit. Cf. *Handelman v. Hustler,* 469 F.Supp. at 1060. The injury to plaintiff's reputation, if any at all, was minimal. Plaintiff claims to have been denied appointments by the courts as legal advisor to government corporations due to defendant's charges but this is only plaintiff's subjective impression (65–67). Furthermore, the publication of defendant's libelous statements was limited. Although defendant published four letters, none of them was made available to the general public (8–9). In addition, there is no evidence that any of plaintiff's then current or potential clients refused to retain him because of defendant's complaint,[8] *see Meehan v. Snow,* 494 F.Supp. at 696, or that plaintiff's associates refused to refer cases to him. Cf. *Handelman v. Hustler Magazine, Inc.,* 469 F.Supp. at 1057 (attorney testified libelous article would affect his referral of clients to plaintiff). In light of the above I recommend that plaintiff be awarded only $2,500 in compensatory damages for his personal humiliation and the injury to his reputation in the legal community.

Although plaintiff seeks damages for a decline in his income and the loss of potential earnings, he has submitted neither evidence of his earnings before and after the libel (61), nor any evidence that his clients refused to retain him.[9] Cf. *Faulk v. Aware, Inc.,* 19 A.D.2d at 470, 244 N.Y.S.2d at 264 (potential employer testified he would not hire plaintiff as a result of de-

8. Plaintiff claims to have lost an important client at this time as a result of defendant's libel but admitted at the May 6, 1982 hearing that he could not prove this statement (58).

9. *See* note 8, *supra.*

**1448**

fendant's libel). For these reasons I recommend that plaintiff not be awarded any compensatory damages for a decline in income or loss of prospective earnings.

 Plaintiff claims to have spent 560 hours in defending himself in this action (or three and one-half months of five day weeks) at a loss to him in billable time of $84,000.00 (560 hours × $150). Although plaintiff may, in fact, have spent seventy days in a two-year period trying to demonstrate to the authorities in Israel that defendant's accusations were groundless, I find the figure inflated and unsubstantiated except for testimony relating to ten one-day trips between either Haifa and Tel Aviv or Haifa and Jerusalem (83). For these ten days of lost income I recommend that plaintiff be awarded the sum of $12,000 (10 days × 8 hours × $150 per hour).[10]

Plaintiff further claims to have spent 56 hours in New York trying to locate defendant in order to obtain a retraction of the libels. Since plaintiff was in the United States on vacation to visit his daughter in San Francisco and admitted that he did not extend his stay for the purpose of his defense (56–57), I recommend that plaintiff be awarded no damages for the period in question. Further, I recommend that he not be reimbursed for $350.00 in out-of-pocket expenses for food and transportation while in New York for the same reasons.

With regard to plaintiff's other out-of-pocket expenses, I recommend that he be awarded $1250.00 for payments made to his law clerks for their assistance in preparing his defense (83). Plaintiff also claims to have spent $750.00 for ten-round trips from Haifa to either Tel Aviv or Jerusalem; this figure includes mileage, transportation and meals (Plaintiff's June 17, 1982 Affidavit at 3). Although this figure represents 1982 gas prices and not the price of gas in 1971–1973 (85), I recommend that plaintiff be

awarded the full amount of $750 or $75 per round trip.[11]

The only other expense reasonably incurred by plaintiff as a direct result of defendant's libel appears to be $50.00 spent for an April 4, 1973 investigation report. This report was made before May 2, 1973, the date on which defendant was advised for a second time that his charges against plaintiff were groundless. All other claimed losses appear to have been sustained after this date[12] and, therefore, were not incurred to mitigate defendant's libel but, rather, were incurred to commence the instant libel action against the defendant. These expenses include $600 in legal fees (Attorneys Shrague and Colliver), $49.69 for two 1974 investigation reports, $1250.00 for translations, etc., (86–87) and $11,400.00 in legal fees paid to New York attorney Edwin M. Slote. Although plaintiff claims to have consulted Mr. Slote in 1974 (a fact supported by Mr. Slote's Affidavit), Mr. Slote's statement for services rendered does not reflect this fact. Rather, the bill covers the time period 1976–1982, which period starts at least three years after the last libelous letter was published by the defendant. Any action brought by plaintiff in 1976 would have been too late to mitigate the damage caused by a 1972–1973 libel; rather, Mr. Slote may have been consulted initially to commence the instant libel action against the defendant. Since Mr. Slote's fee was not a direct result of the defendant's libel, I recommend that plaintiff not be reimbursed for this claimed loss.

## CONCLUSION

For the above stated reasons the undersigned respectfully recommends that plaintiff be awarded no punitive damages and $26,550 in compensatory damages.

10. Although plaintiff testified that his hourly rate of $150 is the amount he charges clients today, and not the rate he charged in 1971–1973 (51), I recommend that his damages be computed at the current rate in consideration of the fact that plaintiff was deprived of the use of this money for so many years.

11. See note 10 *supra.*

12. Plaintiff has submitted only one dated invoice (that of Edwin M. Slote, Esq.) in support of his claims for damages, thereby making it very difficult to ascertain when the expenses were incurred.

Any objections to this report shall be filed with the Honorable Eugene Nickerson no later than February 2, 1983.

Dated: Brooklyn, New York

January 19, 1983

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE

A. SIMON CHREIN, United States Magistrate.

By report dated January 19, 1983 the undersigned recommended that plaintiff in this libel action be awarded $26,550 in compensatory damages. Plaintiff subsequently filed objections to the Magistrate's report and submitted a memorandum of law in support of his objections. The matter has been remanded to the undersigned to determine (1) whether or not plaintiff is entitled to interest should he recover damages; and (2) if he is so entitled, the period of time for which such interest is due; and (3) the method of calculation to be used to compute said interest.

Plaintiff seeks interest on the recommended damages as of the following dates:

| Damages Recommended | Reason | Date From Which Interest Should Be Computed According To Plaintiff |
| --- | --- | --- |
| $12,000 | Lost Billable Time | May 2, 1973 |
| 750 | Travel Expenses | May 2, 1973 |
| 1,250 | Preparation of Defense | May 2, 1973 |
| 50 | Investigation Report | April 4, 1973 |
| 7,500 | Mental Pain and Suffering | January 19, 1983 |
| 2,500 | Physical Pain and Suffering | January 19, 1983 |
| 2,500 | Personal Humiliation and Injury to Reputation | January 19, 1983 |
| $26,550 | | |

### POST–JUDGMENT INTEREST

[24] Plaintiff is entitled to interest on his judgment[1] pursuant to 28 U.S.C.A. § 1961 (West Supp.1983) which provides that "(i)nterest shall be allowed on any money judgment in a civil case recovered in a district court." Such provision has been interpreted as mandatory and not within the discretion of the district court. *See United States v. Michael Schiavone & Sons, Inc.,* 450 F.2d 875, 876 (1st Cir.1971); *Akermanis v. Sea-Land Service, Inc.,* 521 F.Supp.

44, 57 (S.D.N.Y.1981), *rev'd on other grounds,* 688 F.2d 898 (2d Cir.1982).

Although plaintiff made application to this court for an entry of a default judgment in plaintiff's favor, no such judgment has yet been entered. By order filed December 9, 1981 the Honorable Eugene H. Nickerson directed the following:

(a) that the plaintiff recover of the defendant the damages sustained by him on account of the claims alleged in the complaint;

(b) that a hearing be held to determine the amount of plaintiff's damages;

(c) that the aforesaid hearing on the assessment as to plaintiff's damages be referred to the Honorable A. Simon Chrein, Magistrate; and

(d) that a judgment be made and entered herein in favor of the plaintiff and against the defendant by reason of the matters and things alleged by the plaintiff in his complaint against the defendant in the amount as determined at the aforesaid hearing without further application or order of this Court.

The default of the defendant was noted by the clerk of this court on December 15, 1981 and entered on December 18, 1981.

Post-judgment interest awarded pursuant to 28 U.S.C.A. § 1961 cannot be computed until such time as a final money judgment for a sum certain is reflected in the records of the clerk's office. Fed.R.Civ.P. 58, 79(a). Since damages were not calculated until after the May 6, 1982 evidentiary hearing before the undersigned, the December 9, 1981 order of this court does not constitute a final money judgment. Should this court decide to adopt the Magistrate's recommendation as to damages and render a judgment in that amount, the judgment will be effective only as of the date it is entered on the civil docket sheet for this action. Fed.R.Civ.P. 58, 79(a).

Once judgment for plaintiff is finally entered by the clerk of this court, interest "shall be calculated from the date of the entry of the judgment, at a rate equal to

---

1. Since defendant failed to appear in this action, plaintiff is entitled to judgment by default. Fed.R.Civ.P. 55(a). A judgment by default shall be neither different in kind from nor exceed in amount that prayed for in the demand for judgment. Fed.R.Civ.P. 54(c).

the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment." *See Federal Courts Improvement Act of 1982,* Title III, § 302(a), 28 U.S.C.A. § 1961(a) (West Supp.1983).[2]

## PREJUDGMENT INTEREST

[25] Plaintiff also requests that prejudgment interest be awarded in this action. Federal law makes no provision for the award of interest prior to judgment.[3] 28 U.S.C.A. § 1961. However, this does not mean that a prevailing plaintiff may not recover such interest. *See Illinois Central Railroad Company v. Texas Eastern Transmission Corporation,* 551 F.2d 943, 944 (5th Cir.1977). In diversity[4] cases such as this the question of whether or not the plaintiff is entitled to prejudgment interest is determined by state law. *See Jarvis v. Johnson,* 668 F.2d 740, 746 (3rd Cir.1982); *Budge v. Post,* 643 F.2d 372, 375 (5th Cir.1981); *United Bank Limited v. Cosmic International, Inc.,* 542 F.2d 868, 877 (2d Cir.1976); *Spec-*

*tor v. Mermelstein,* 485 F.2d 474, 481 (2d Cir.1973); *St. Clair v. Eastern Air Lines, Inc.,* 302 F.2d 477, 480 (2d Cir.1962); *Mount Sinai Hospital v. Borg-Warner Corporation,* 527 F.Supp. 922, 923 (S.D.N.Y.1981); *Rock Transport Properties Corporation v. Hartford Fire Insurance Company,* 312 F.Supp. 341, 348 (S.D.N.Y.), *aff'd,* 433 F.2d 152 (2d Cir.1970); *Collier v. Granger,* 258 F.Supp. 717, 718 (S.D.N.Y.1966). The law of New York governs plaintiff's substantive right to prejudgment interest in this diversity action. *See Lee v. Joseph E. Seagram & Sons, Inc.,* 592 F.2d 39, 41 n. 2 (2d Cir.1979); *Spector v. Mermelstein,* 485 F.2d at 481–83; *accord, In re Air Crash Disaster Near Chicago, Illinois, on May 25, 1979,* 480 F.Supp. 1280, 1282 (N.D.Ill.1979), *aff'd,* 644 F.2d 633 (7th Cir.1981).

█ Plaintiff claims that he is entitled to interest on his award of expenses pursuant to N.Y.Civ.Prac.Law § 5001(b) (McKinney 1963).[5] Plaintiff argues that such interest should be calculated either from May 2, 1973[6] or from the date on which they were incurred. However, plaintiff ignores the provisions of N.Y.Civ.Prac.Law § 5001(a).[7] Where prejudgment interest is

**2.** Prior to October 1, 1982 interest was calculated from the date of the entry of the judgment at the rate allowed by State law. 28 U.S.C. § 1961 (Supp. II 1949), *amended by,* 28 U.S.C.A. § 1961(a)-(c) (West Supp. 1983). New York's interest rate on judgments has been 9% per annum since June 25, 1981. N.Y.Civ.Prac.Law § 5004 (McKinney Supp. 1964–1982). However, it was the intent of Congress to set a "realistic and nationally uniform rate of interest on judgments in the Federal Courts. . . ." S.Rep. No. 275, 97th Cong., 2d Sess. 1, 11, *reprinted in* 1982 U.S.Code Cong. & Ad.News 11, 21. By establishing a uniform rate of interest Congress intended to eliminate "the economic incentive . . . for a losing defendant to appeal a judgment and accumulate interest on the judgment award at the commercial rate *during the pendency of the appeal." Id.*

**3.** Congress had the opportunity to amend the federal statute when it passed the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 302(a), 96 Stat. 25, 55–56 (1982). In fact the Senate Report that accompanied the bill, S.1700, states that the bill permits the award of prejudgment interest at the discretion of the district judge when "necessary to compensate the plaintiff." S.Rep. No. 275, 97th Cong., 2d Sess. 1, 12, *reprinted in* 1982 U.S. Code Cong. & Ad.News 11, 22. However, the

law as enacted makes no such provision. *See* Federal Courts Improvement Act of 1982, Pub.L. 97–164, § 302, 96 Stat. 25, 55–56 (1982).

**4.** Plaintiff is a citizen of Israel; defendant was last known to reside in Flushing, New York.

**5.** § 5001(b) provides in pertinent part:
(b) *Date from which computed.* Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

**6.** May 2, 1973 is the date on which the Israeli Ministry of Justice advised the defendant that there was no evidence to support his claims.

**7.** § 5001(a) provides:
*Interest to verdict, report or decision*
(a) *Actions in which recoverable.* Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission de-

granted by statute, the award of such interest is mandatory and not subject to the discretion of the trial court. *See Lee v. Joseph E. Seagram & Sons, Inc.,* 592 F.2d at 41; *United Bank Limited v. Cosmic International, Inc.,* 542 F.2d at 878; *Spector v. Mermelstein,* 485 F.2d at 482; *Julien J. Studley, Inc. v. Gulf Oil Corporation,* 425 F.2d 947, 950 (2d Cir.1969). However, N.Y. Civ.Prac.Law § 5001(a) limits the award of interest calculated from either the date of injury or accrual to contract and property damage cases. New York does not provide for preverdict interest in libel actions. *Wilson v. City of Troy,* 135 N.Y. 96, 105, 32 N.E. 44, 46 (1892); *Rupert v. Sellers,* 65 A.D.2d 473, 411 N.Y.S.2d 75 (4th Dept.1978), *aff'd,* 50 N.Y.2d 881, 408 N.E.2d 671, 430 N.Y.S.2d 263 (1980), *cert. denied,* 449 U.S. 901, 101 S.Ct. 272, 66 L.Ed.2d 132 (1980).

■ Plaintiff also seeks interest on the entire award of damages from the date of the Magistrate's report (i.e., January 19, 1983) to the date of entry of the final judgment. Prejudgment interest is available in a New York libel action once a verdict, report or decision has been rendered even though no judgment has yet been entered. N.Y.Civ.Prac.Law § 5002.[8] In fact, such interest is mandatory. *See Goodman v. Heublein, Inc.,* 682 F.2d 44, 46 (2d Cir. 1982). However, since no final report or decision has been rendered by this court, plaintiff's interest on his award cannot begin to run.

■ Although a judge may designate a magistrate to hear and determine any non-dispositive pretrial matter pending before the court, *see* 28 U.S.C. § 636(b)(1)(A) (1976), magistrates act under the supervision of the district judges. *Mathews v. Weber,* 423 U.S. 261, 270, 96 S.Ct. 549, 554, 46 L.Ed.2d 483 (1976). A judge may designate a magistrate to conduct hearings and to make proposed findings of fact and recommendations. 28 U.S.C. § 636(b)(1)(B). However, the authority for making final decisions rests with the district judge. *Mathews v. Weber,* 423 U.S. at 270, 96 S.Ct. at 554. Since the reports and recommendations of a magistrate are subject to adoption, rejection or modification by a district judge, 28 U.S.C. § 636(b)(1), they do not constitute a final decision of this court.[9] Therefore, the recommendation that plaintiff be awarded $26,550 in compensatory damages is just that, a recommendation, which will become final only if this court should adopt the recommendation.

■ In conclusion, under both New York and federal law plaintiff is not entitled to interest on his award until such time as this court renders a final decision disposing of the action. However, plaintiff would be entitled to interest for the period of time between decision by this court and entry of a final money judgment by the clerk of this court.

Any objections to this report shall be filed with the Honorable Eugene H. Nickerson no later than July 6, 1983.

Dated: Brooklyn, New York
June 22, 1983

---

**8.** § 5002 provides:
*Interest from verdict, report or decision to judgment*
Interest shall be recovered upon the total sum awarded, including interest to verdict, report or decision, in any action, from the date the verdict was rendered or the report or decision was made to the date of entry of final judgment. The amount of interest shall be computed by the clerk of the court and included in the judgment.

*(footnote text continued from left column, above § 5002):* priving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.

**9.** Nor would a Magistrate's report qualify as a final decision under N.Y.Civ.Prac.Law § 5002. *See* note 8 *supra.* The report of a referee to report or the verdict of an advisory jury is not a verdict, report or decision within the meaning of N.Y.Civ.Prac.Law § 5002 because it is merely advisory until confirmed by the court. *See* 5 Weinstein, Korn and Miller, *New York Civil Practice,* ¶ 5002.04 (1982). *See also In re East River Land Company,* 206 N.Y. 545, 100 N.E. 421 (1912); *accord, In re Erlanger,* 237 N.Y. 159, 142 N.E. 571 (1923); *In re Ford,* 48 A.D.2d 473, 369 N.Y.S.2d 855 (3rd Dept.1975), *aff'd,* 39 N.Y.2d 1000, 355 N.E.2d 295, 387 N.Y.S.2d 240 (1976); *Hartman v. City of New York,* 29 Misc.2d 578, 218 N.Y.S.2d 404 (Sup.Ct. Sullivan County 1961).